**FERGUSON–STEERE MOTOR COMPANY, Plaintiff,**

v.

, **UNITED STATES of America, Defendant and Interstate Commerce Commission, Intervener.**

**Civ. A. No. 5741.**

United States District Court
N. D. Texas, Dallas Division.

Nov. 3, 1954.

Frank Brooks, Warren Whitham, Callaway, Reed, Kidwell & Brooks, Dallas, Tex., for plaintiff.

I. K. Hay, Interstate Commerce Commission, Washington, D. C., James Durkin, Asst. Atty. Gen., John C. Ford, Asst. U. S. Atty., Dallas, Tex., Bernard E. English, Interstate Commerce Commission, Fort Worth, Tex., Edward M. Reidy, General Counsel, Interstate Commerce Commission, Washington, D. C., for defendant.

Before HUTCHESON, Circuit Judge, ATWELL, Chief Judge, and DAVIDSON, District Judge.

HUTCHESON, Circuit Judge.

This is an action brought under Sections 1336, 1398, and 2321–2325 of Title 28, United States Code, to set aside and annul an order of the Interstate Commerce Commission, hereinafter called the Commission, entered under the provisions of Section 216(g) [1] of the Interstate Commerce Act, wherein the Com-

---

1. As material here, this section provides: "Whenever there shall be filed with the Commission any schedule stating a new individual or joint rate, fare, charge, or classification *. * *, the Commission is authorized and empowered * * * to enter upon a hearing concerning the lawfulness of such rate, fare, or charge, or such rule, regulation, or practice, and pending such hearing and the decision

thereon the Commission, by filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate, fare, or charge, or such rule, regulation, or practice, but not for a longer period then seven months beyond the time when it would otherwise

mission suspended certain schedules of rates proposed by the plaintiff and instituted an investigation concerning the lawfulness of said rates.

The schedules in question were filed by the plaintiff with the Commission to become effective on July 28, 1954, and provided for reductions in rates and charges for the transportation of petroleum products in tank trucks from points in Texas to points in New Mexico. On July 26, 1954, the Interstate Commerce Commission, Board of Suspension, entered the order referred to above, in which it was stated:

"That said schedules make certain reductions in rates and charges for the transportation in interstate or foreign commerce of petroleum products in tank trucks and that the rights and interests of the public would be injuriously affected thereby."

On July 29, 1954, the plaintiff filed a Petition for Reconsideration, in which it requested Division 2 of the Commission, the appellate division designated to consider and act upon petitions for reconsideration in such matters, "to cancel and nullify the order heretofore entered herein and to allow the suspended schedules to become effective."

On September 17, 1954, the Commission, Division 2, acting as an appellate division, denied the petition, stating:

"That sufficient reasons have not been shown for vacation of the order described above."

Thereupon, the plaintiff, on October 15, 1954, filed the complaint herein, in which it prays that a three judge court be convened, and that upon final hearing the order of July 26, 1954, be adjudged null and void; that the enforcement, operation and execution of said order be permanently enjoined; and that such other relief may be granted as to the Court may seem proper.

Counsel for the United States, and they are various and sundry, instead of admitting or of answering and joining issue with the allegations of the complaint, make what might be called a small dissertation or essay on "The legislative scheme of regulation provided for by the Interstate Commerce Act", in the course of which they advert to the past and present relation of the antitrust laws to the activities of carriers, and the place of the commission in that relation, and express doubt whether the practice of the commission "in invariably giving the same reason for every suspension", namely "that the rights and interest of the public would be injuriously affected thereby", is in accordance with the statute, 49 U.S.C.A. § 316(g).

Having thus contributed to the general enlightenment or the obfuscation of all concerned, they conclude, "Wherefore the United States says that it neither admits nor denies the plaintiff's allegations. The United States takes a neutral position. The United States does not oppose the order. The United States does not support the order at this juncture."

The Interstate Commerce Commission intervened in said action, and filed its answer, praying that the complaint be dismissed and that the relief prayed for be denied, and all parties appearing, the cause was heard and submitted on oral argument and briefs, and now stands for decision.

While plaintiff in its argument concedes that Motor Carriers "are subject to regulation by the commission in rather meticulous detail, as set forth in part 2 of the Interstate Commerce Act (49 U.S.C., Sec. 301 et seq.)", it nevertheless insists that "Such carriers retained under the act the right to initiate their own rates";[2] that "Any derogation of that right must be carefully scanned to

go into effect; * * *. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate, fare, or charge, or classification, rule, regulation, or practice, shall go into effect at the end of such period: * * *."

2. New York Central R. Co. v. United States, D.C., 99 F.Supp. 394, 398, 399; Skinner & Eddy Corp. v. United States, 249 U.S. 557, 564, 39 S.Ct. 375, 63 L.Ed. 772.

see if it is bottomed on sound statutory authority"; and that the "power to suspend the operation of a tariff schedule is interwoven with and is an integral part of the right and power of the Commission to enter upon a hearing concerning the lawfulness of such rate."

So insisting, it urges upon us that the provision of Section 316(g) of the Act, authorizing the Commission to "suspend the operation of such schedule and defer the use of such rate * * *" by filing with such schedule and delivering to the carrier or carriers affected thereby a statement *in writing of its reasons for suspension*" (emphasis supplied), must be strictly construed and rigidly applied to require a statement of reasons, given specific application to the rate or schedule deferred or suspended and as specifically pointing out wherein the rate or schedule is unlawful and why it should be suspended or deferred.

Planting itself on these premises, it argues with force and vigor in effect: that the so-called reason put forward by the Commission in support of its suspension order is not a reason at all but a mere excuse, indeed "is nothing more than a tired overworked phrase which says nothing and means less", put forward as face saving in support of an order which would otherwise be mere fiating; and that since this is so, the Commission has exceeded its authority in ordering a suspension without complying with the statute, and the order must be adjudged void, and its operation enjoined.

The Commission, evidently of the opinion that if it can be saved from its friends it can take care of its enemies,

boldly and confidently opposes to plaintiff's position two propositions,[3] either of which, if decided in its favor, would require the denial of the relief plaintiff seeks. In support of its first proposition, the Commission, citing many cases,[4] urges upon us that if the Court should vacate the suspension order and thereby permit the reduced rates to become effective, it would be in effect prescribing or fixing new rates which it has been uniformly held the courts have no power to do.

In support of its second proposition, the Commission urges that the reason given by the Commission is patently adequate and that the judicial function is exhausted where it is found to constitute a rational basis for the conclusions approved by the administrative body, since the Courts are not concerned with the correctness of the Commission's reason or with the consistency and inconsistency of decisions which it has rendered.

Pointing out that the order does not constitute a final determination with respect to the reasonableness and lawfulness of the proposed schedules but serves only as an interim action, to preserve the status quo while the Commission is making the investigation required to determine whether the proposed rate is or is not lawful, and that under the law the suspension can continue effective only for the maximum period fixed by statute, the Commission presses upon us that for the Court to sustain the plaintiff's contention here would be for it to invade the province of the Commission in a matter which the Congress, without defini-

---

3. (1) The Commission has the sole discretion in determining whether published rates shall be suspended or not. The Courts have refused to review the Commission's action in suspending or refusing to suspend schedules of rates, and it is firmly established that they will not undertake to perform the administrative functions of the Commission in this regard.

(2) The suspension order entered by the Commission complies with the provi-

sions of Section 216(g) of the Interstate Commerce Act, 49 U.S.C.A. § 316(g).

4. Board of Railroad Com'rs of State of North Dakota v. Great Northern R. Co., 281 U.S. 412, 50 S.Ct. 391, 74 L.Ed. 936; Carlsen v. United States, D.C., 107 F. Supp. 398; M. C. Kiser Co. v. Central of Georgia Ry. Co., D.C., 236 F. 573; Manhattan Transit Co. v. United States, D.C., 24 F.Supp. 174; Merchant Truckmen's Bureau of New York v. United States, D.C., 16 F.Supp. 998.

tion or limitation, has confided broadly to the Commission.

In addition, the Commission cites as directly in point a decision of a statutory three judge court,[5] in the case of Hudson and Manhattan Railroad Co. v. U. S. and Interstate Commerce Commission, decided July 16, 1951, and in support of its citation attaches a copy of the unreported opinion to its brief.

In that case, one of the grounds of attack upon the order of suspension was that it did not sufficiently set forth reasons therefor. The Court dismissed the complaint, stating correctly, we think, with respect to this ground, "The order distinctly stated that the tariffs in question make certain increases in fares for the interstate transportation of passengers, and, the rights and interests of the public appearing to be injuriously affected thereby, we hold this to be adequate compliance with 49 U.S.C., Sec. 15(7) that it contain a statement of the reasons for the suspension."

Plaintiff cites no cases from any court, specifically sustaining its view that the provision of the statute, for giving the carrier reasons, is mandatory rather than directory in the sense that it is for the courts to test and determine the sufficiency of the reasons given. It cites no case in which a suspension order was enjoined for want of adequate reason. It, nevertheless insists that the Commission is wrong on both of its grounds and the injunction prayed for should be granted.

We do not think so. Without discussing or dealing with the Commission's first proposition: that suspension orders are not subject to court review further than to say of it, that whether this is true to the full extent claimed by the Commission, it is certainly true that the making of the orders is confided to the discretion of the Commission, and that only upon the closest and most compelling showing that discretion was not exercised at all, or, if exercised, was abused, would a court interfere with a suspension order; we think it clear that, considering the reason given by the Commission in this case in the light of this compelling principle, it cannot be said of it that it was no reason at all and that the Commission, therefore, entered the order not in the exercise of its discretion and in compliance with the statute but without the exercise of discretion and in defiance of the statute.

This is not to say that we endorse, as the best type of administration, the practice, if it is the practice of the Commission, of employing a rubric such as the one employed here to keep the promise to the ear while it breaks it to the hope of the carrier. Indeed, of quite the contrary opinion, we believe the Commission would be better advised to make as clear as it can in each case wherein lies the rub of the suspended rate or schedule. It is to say, though: that when, as here, the question is one of the power and duty of the Court to interfere because the Commission has acted in violation, or without the authority, of law, it is not for the Court to tithe mint, anise and cumin by rejecting the words chosen by the Commission to convey its reasons to the carrier; and that to sustain the attack upon the order would be to do just that.

The relief sought by plaintiff is denied. Its bill is dismissed for want of equity.

DAVIDSON, District Judge (concurring).

The plaintiff brought this action to set aside the Commission's order, invoking those sections of the law wherein a specially constituted three-judge court may set aside "any order" of the Commission where it is found that such "order" is illegal· or void.

After careful study and full consideration of all the questions raised and the

5. The United States District Court for the Southern District of New York, composed of Thomas W. Swan, Chief Judge United States Court of Appeals for the Second Circuit, and Sidney Sugarman and Edward Weinfeld, United States District Judges.

arguments and authorities presented, we reach the conclusion that the motion to dismiss is well taken and that the court is without jurisdiction.

It appears that this court does not have jurisdiction of the cause in that neither the action of the Commission of July 26, 1954 in suspending such rates nor the action by the Commission of September 17, 1954 in refusing to vacate the order previously made constituted such "order" within the meaning of those sections of the statute under which the appeal is sought. The order involved a matter of procedure only, interlocutory in character, and is wanting in finality.

We, the same court now sitting, the same three judges, a little more than a year ago sat in the case of Houston Fire & Casualty Co. v. United States and Interstate Commerce Commission. Our opinion is filed in the office of the District Court in Fort Worth as of date February 11, 1953. In that case a very similar question was presented and in passing upon it the court reasoned to such an end, citing authorities as follows:

In United States v. Griffin, 303 U.S. 226, 232, 58 S.Ct. 601, 604, 82 L.Ed. 764, the court dismissed an action to set aside a determination of the Commission, relating to railway mail pay, for want of jurisdiction, and, in so doing, traced the history of the act and made the following observations with respect to the limited jurisdiction conferred:

"The Urgent Deficiencies Act provides a method of judicial review of orders of the Interstate Commerce Commission possessing the following extraordinary features: "(1) The original hearing in the district court is not before a single judge, but before three, of whom one must be a circuit judge; (2) From the decree of the district court as so constituted a direct appeal to the Supreme Court is granted as of right, instead of a review by a circuit court of appeals; (3) Upon both the trial court and the Supreme Court rests the obligation to give the case precedence over others. These features were first introduced by the Expediting Act of 1903, 32 Stat. 823, 15 U.S.C.A. §§ 28, 29 and notes for suits by the United States to enforce the antitrust and commerce laws. They were extended by the Hepburn Act of 1906, § 5, 34 Stat. 584, 590, 592, 49 U.S.C.A. § 16 and note, to suits to enforce or to set aside orders of the Interstate Commerce Commission. When that jurisdiction was vested in the Commerce Court provisions with like effect were provided for cases coming before it. 36 Stat. 539. To its jurisdiction the district court succeeded, with these features, under the Urgent Deficiencies Act.

"In the opinion of the Congress jurisdiction with the extraordinary features of the Urgent Deficiencies Act was justified by the character of the cases to which it applied— cases of public importance because of the widespread effect of the decisions thereof. In such cases Congress sought to guard against ill-considered action by a single judge and to avert the delays ordinarily incident to litigation. In construing the Act, this Court concluded that despite the broad language used in the Commerce Court Act, Congress could not have intended to include in this special jurisdiction suits to set aside every kind of order issued by the Commission. For substantially every decision, and every other kind of action by the Commission is expressed in, or if followed by, an order; and many of the orders are obviously not of such public importance and widespread effect as to justify, in cases affecting them, the extra-ordinary features of the Urgent Deficiencies Act."

Similarly, in the recent case of United States v. I. C. C., 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451, the Court again had occasion to review the history of the statutes and pointed to the policy of

narrowly construing them. Mr. Justice Black stated, 337 U.S. at page 433, 69 S.Ct. at page 1420:

"We have frequently pointed out the importance of limiting the three-judge court procedure within its expressly stated confines. We are confident that in holding that one judge rather than three should entertain cases challenging Commission reparation orders we interpret the congressional expediting procedure and the Interstate Commerce Act in accordance with their basic purpose."

Under this prevailing doctrine, the courts have consistently held that jurisdiction to review orders of the Commission do not authorize review of preliminary or interlocutory action of the type involved in the case at bar. The reason for this is the requirement that the administrative remedies should be exhausted and administrative determination arrived at on the merits before resort to the court. This is especially true of investigative steps, such as the one in this case, preliminary to a determination of the matter investigated. See Davis, Administrative Law, Sec. 196; United States v. Illinois Central Railroad Co., 244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007; and Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, at page 385, 58 S.Ct. 963, at page 967, 82 L.Ed. 1408, in which the court said:

"The provision for review thus relates to orders of a definitive character dealing with the merits of a proceeding before the commission and resulting from a hearing upon evidence and supported by findings appropriate to the case."

Cf. Title 5, Section 1001, paragraph (d).

In the instant case there is no issue of the Commission having made determination with respect to the lawfulness or reasonableness of the rates involved. The Commission has simply determined that in order for it to properly consider the rights and interests of the public, the involved rates should be suspended pending the investigation concerning the lawfulness of said rates. It cannot be anticipated as to whether the Commission will find such rates lawful or unlawful after the investigation.

It must be emphasized that Section 216(g) of the Interstate Commerce Act authorizes the Commission, within its discretion, upon the filing of schedules of rates "to enter upon a hearing concerning the lawfulness of such rate"; the lawfulness or unlawfulness of such rate is not prejudiced and no order in connection therewith is proper until after hearing. Though the provision of Section 216(g) of the Interstate Commerce Act has been lightly treated by the Commission, and the action of the Commission in failing to specify the grounds upon which its conclusions are predicated is contrary to the intent of Congress, nevertheless, this does not create an additional ground of jurisdiction.

The complaint is dismissed for want of jurisdiction in this court to hear it and without prejudice to plaintiff's right to proceed elsewhere as it may be advised.

My conclusion as stated above is that the case must be dismissed and I therefore concur in the decision of Chief Judge of the Circuit Court, Honorable Joseph C. HUTCHESON.

ATWELL, Chief Judge (dissenting).

The plaintiff is a motor carrier of petroleum products from Texas to New Mexico. One of its competitors is a railroad, and the railroad rate on the same sort of freight was lower than the plaintiff's rate. It exercised its right to initiate its own rate, and in order to meet the rate that had been recently established by the railroad it reduced its own rate to the same figure that was charged by the railroad.

This right to adjust its rate to meet competition is within the zone of reasonableness, and resulted in no undue prej-

udice, or, preference, or, discrimination. This exact point was determined in New York Central R. Co., v. United States, D.C., 99 F.Supp. 394, which was affirmed in I. C. C. v. New York Central R. Co., 342 U.S. 890, 72 S.Ct. 201, 96 L.Ed. 667. It is also adequately supported by other authority. United States v. Chicago, M. St. P. & Pacific R. Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023; Texas & Pacific R. Co. v. United States, 289 U.S. 627, 53 S.Ct. 768, 77 L.Ed. 1410; Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 378, 63 L.Ed. 772. In this latter case it was said that, "Neither the Act to Regulate Commerce, nor any amendment thereof, has taken from the carriers the power which they originally possessed, to initiate rates; that is, the power, in the first instance, to fix rates, or to increase or reduce them." These provisions apply to rail rates, motor rates, water rates, or forwarder rates.

Such a rate is unlawful if it is unjust, or, unreasonable, that is, too high; or, gives any undue or unreasonable preference or advantage to any particular person, port, etc.; or subjects any particular person, port, or, description of traffic to any unjust discrimination, or, any undue, or, unreasonable prejudice, or, disadvantage.

So, also under the National Transportation policy a motor carrier rate can be unlawful if it constitutes an unfair, or, destructive competitive practice. Rates avoiding these pitfalls are lawful and are not subject to lawful change, or, challenge by the Interstate Commerce Commission. The Commission has no more power than is given to it by the statute, and can only act in accordance with the statute creating it and setting forth its powers. See Southern Pacific Co. v. Interstate Commerce Commission, 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283.

In the case at bar, the Commission suspended the rate filed by plaintiff, and giving as a reason for such suspension that, "It further appearing that the rates and interests of the public would be injuriously affected thereby."

The only authority that the Commission has to make such an order is found in Section 216(g) of the Interstate Commerce Commission Act. That statute requires the Commission to make "a statement in writing of its reasons for such suspension." The requirement of the statute is definite and certain and, therefore, it must be assumed that the Commission must be equally explicit in stating its reasons for suspending a rate. It can only take final action in accordance with the terms of the statute.

In the instant case, the plaintiff's tariff was suspended by the Commission, and the reason given was, and is, "that the rights and interests of the public would be injuriously affected thereby." It is very difficult to see how the shipping public would be injuriously affected by the reduction of its own rate. The shipping public would benefit thereby. And again we suggest that the purported reason is no reason at all, either in fact, equity, or, law. We know that the Commission only has such authority as the statute gives it. The "reason" must be unreasonable, or, unjust, causing undue, or, unreasonable preference, unjust discrimination, undue, or, unreasonable prejudice, or, constitutes a destructive, competitive practice.

It is also generally understood that the general meaning of " 'arbitrary and capricious,' " is, " 'without any reasonable cause, without any cause based upon the law; without reason given; in disregard of evidence. It is comparable to, without justification or excuse; with no substantial evidence to support it; a conclusion contrary to substantial, competent evidence.' " See In re Rogers, D.C., 47 F.Supp. 265, 266.

Judge Hutcheson, in Braswell v. United States, D.C., 49 F.Supp. 940, announced that whenever the court is presented with an instance where the Commission has acted arbitrarily it has not hesitated to set aside the order of the

Commission. See also United States v. Baltimore & Ohio R. Co., 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587; Wichita R. & Light Co. v. Public Utilities Commission, 260 U.S. 48, 58, 43 S.Ct. 51, 67 L.Ed. 124.

Again, I wish to emphasize the fact that the Commission can suspend a rate only by making a statement in writing of its reasons for such suspension. Having failed in this indispensable requisite, its subsequent action was, and is, void.

"Rights and interests of the public" is a mere generalization. It is conclusion. In Atlanta & St. Andrews Bay Ry. Co., v. United States, D.C., 104 F.Supp. 193, it was stated and supported by Alabama Great Southern R. Co., v. United States, 340 U.S. 216, 227, 71 S.Ct. 264, 95 L.Ed. 225, that the Commission has the duty to make basic or quasi jurisdictional findings essential to the statutory validity of the order. See Eastern-Central Motor Carriers Ass'n v. United States, 321 U.S. 194, 64 S.Ct. 499, 88 L.Ed. 668; Baltimore & O. R. Co. v. United States, D.C., 22 F.Supp. 533; Saginaw Broadcasting Co. v. Federal Communications Commission, 68 App. D.C. 282, 96 F.2d 554.

The Century dictionary's definition of the word, "reason," is, "a ground or motive for a belief, course of action, or the like."

These thoughts drive us once more to the statutory requirement that the Commission shall state in writing its reasons, or, reason, for suspension. Since there is not a sufficient compliance with the statute, restraint must follow.

Just what may appropriately hereafter occur, has no place in this opinion. Whenever the Commission shall act lawfully, that is, within the terms of the statute, its voice must be obeyed, but until it does so, its voice is without any legal compulsion, and the citizen need not attend or perform in accordance with its direction.