The **LONG ISLAND RAIL ROAD COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 16321.

United States District Court
E. D. New York.

May 9, 1956.

Otto M. Buerger, New York City, for plaintiff, William A. Colton and James T. Gallagher, New York City, of counsel.

John F. Finerty, New York City, for Brooklyn Eastern Dist. Terminal, plaintiff-intervenor.

Stanley N. Barnes, Asst. Atty. Gen., Leonard P. Moore, U. S. Atty., Albert H. Buschmann, Asst. U. S. Atty., Brooklyn, N. Y., James E. Kilday and Albert Parker, Attys., Dept. of Justice, Washington, D. C., and Robert W. Ginnane, Gen. Counsel, and H. Neil Garson, Asst. Gen. Counsel, Washington, D. C., for defendant United States of America and intervening defendant Interstate Commerce Commission.

John F. Reilly, Washington, D. C., for intervening defendant Delaware, L. & W. R. Co., Rowland L. Davis, Jr., New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for intervening defendant Erie R. Co., Edwin S. S. Sunderland, Ralph M. Carson, New York City, and Chester F. Leonard, New York City, of counsel.

No brief submitted for intervening defendant Lehigh Valley R. Co.*

Before SWAN, Circuit Judge, and BYERS and BRUCHHAUSEN, District Judges.

BYERS, District Judge.

This case is before a statutory three judge court convened pursuant to statute.[1] It came on for argument on April

* The Long Island's brief states that the Lehigh Valley has joined with it in establishing service on a joint rate and through rate basis.

1. 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321–2325.

16, 1956 on plaintiffs' motion for an interlocutory injunction and defendants' cross-motion for summary judgment and dismissal of the complaint. It is the latter with which this decision is concerned.

The complaint was filed February 29, 1956, and upon the same date a temporary restraining order was issued pursuant to 28 U.S.C.A. § 2284, staying the parties defendant from putting into effect the tariff schedules involved in the proceeding before the Commission. This order was subsequently extended by consent to April 30, 1956. By amendments submitted at the argument on April 16th and consented to by the defendants, the original complaint has been amended to allege matters which took place before the Commission subsequent to February 29, 1956. Such of these matters as appear to be relevant to our decision will be mentioned in the subsequent discussion.

The proceeding before the Commission was initiated by the filing by three railroads, for brevity referred to respectively as Lackawanna, Lehigh Valley and Erie, of tariff schedules to become effective on various dates in November and December 1955, proposing to furnish trailer-on-flat-car service to and from the Borough of Queens, New York City. Such service, called by the parties "piggy-back service", may be explained as follows: A trailer with its contents of freight collected, for example, in Buffalo, New York, is there placed on a flat-car and transported to the railroad's freight yard in Hoboken or Jersey City, N. J., where the trailer is removed from the flat-car; the trailer is then attached to a truck and moved over the highways for delivery to the consignee of the freight in the Borough of Queens. Conversely, if the shipment originates in Queens for delivery in Buffalo, similar movements by truck, flat-car, and truck are made in the opposite direction. A "piggy-back" service had previously been established

for the Borough of Manhattan and several other localities within the City of New York, but not for the Borough of Queens.[2] It had long been the practice to transport freight from the New Jersey railheads to Queens on car-floats or by lighters operated respectively by Long Island and Brooklyn Eastern District Terminal. Fearing that the proposed new "piggy-back" service to and from Queens would result in competition disastrous to them, Long Island and Brooklyn Terminal filed with the Commission protests and requests for suspension of the proposed tariffs, as they were entitled to do under section 15(7) of the Interstate Commerce Act, 49 U.S.C.A. § 15(7). Long Island's protest sets out its contention that the proposed service is not transportation by motor vehicle incidental to railroad transportation in the performance within a terminal area of transfer, collection or delivery service within the exemption provided by 49 U.S.C.A. § 302(c), but is an attempt to extend the proponent railroads' lines from New Jersey to the Borough of Queens without first obtaining a certificate of public convenience and necessity as required by 49 U.S.C.A. § 1(18). The protest also sets out that the Long Island emerged in 1954 from a reorganization under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205 and is now operating as a Railroad Redevelopment Corporation pursuant to Chap. 824 of the Laws of New York 1954, Ex.Sess., under a 12 year program of rehabilitation and modernization approved by the New York Public Service Commission, the Interstate Commerce Commission and the Long Island Transit Authority. It fears that the competition of the proposed "piggy-back" service will reduce its income to such an extent as to wreck its 12 year program.

The Eastern District Terminal has been permitted to intervene as a party plaintiff, and the Lackawanna and Erie have been permitted to intervene as parties defendant.

2. See Trailers on Flat Cars, Eastern Territory, 296 I.C.C. 219; compare Pick-
up and Delivery Limits at Los Angeles, Calif., 293 I.C.C. 663.

The Commission, by its Board of Suspension, voted not to suspend the proposed tariffs; but on appeal by the protestants (plaintiffs here), Division 2 of the Commission, acting as an appellate division, on November 15th and 23rd, and the Board of Suspension on December 7th, voted to investigate the lawfulness of the proposed rates and to suspend their operation until June 15, 1956, "unless otherwise ordered by this Commission." The proponent railroads promptly filed a petition for reconsideration, to which the protestants filed replies. On February 20, 1956, Division 2 vacated the prior suspension orders and discontinued the investigation as of March 1, 1956.[3] On February 27 the protestants by telegrams requested the Commission to stay the effective date of the order of February 20 for at least 30 days beyond March 1, 1956. This request was denied on February 29. On the same date the plaintiffs obtained the temporary restraining order already mentioned. Because of such order the Commission by its Chairman, suspended operation of the tariffs until further order by the Commission.[4]

The suspension orders of Division 2 are quoted in part. The November 15th order stated:

"That upon consideration of the said schedules and protests thereto there is reason to believe that they would, if permitted to become effective, result in rates and charges,

rules, regulations or practices which would be unjust and unreasonable in violation of the Interstate Commerce Act; * * *."

The November 23rd order stated:

"That upon consideration of the said schedules and protests thereto there is reason to believe that they would, if permitted to become effective, result in rates and charges which purport to extend service beyond the area served by respondents in violation of the Interstate Commerce Act."

The vacating order of February 20th recited no reasons other than "good cause appearing therefor." The original complaint challenged the validity of the vacating order on the ground (1) that "good cause appearing therefor" was an insufficient statement of reasons for the Division's about face, and (2) that the order did not comply with the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b),[5] as construed in Amarillo-Borger Exp. v. United States, D.C.N.D.Tex., 138 F.Supp. 411.

The statute, 49 U.S.C.A. § 15(7), does not require the Commission to state its reasons when suspension of proposed rates is denied; only when suspension is granted must reasons be stated.

By a "corrected order" entered (probably March 1, 1956) nunc pro tunc as of February 20th, and incorporated by amendment to the complaint, Division 2 substituted for the phrase "good cause

---

3. The November suspension orders of Division 2 had been by a two to one vote. The order of February 20th, which vacated them, was also by a two to one vote, one of the former majority having retired and having been replaced by a new member, who joined with the former dissenter in voting to vacate them.

4. Chairman Arpaia's order entered February 29, 1956 read:
 "That solely in obedience to a temporary restraining order issued by the United States District Court for the Eastern District of New York on February 29, 1956 the operation of the said schedules contained in said tariffs thereto, be, and they are hereby, suspended

unless otherwise ordered by the Commission, and that no change shall be made in such rates, rules, regulations and practices during the period of suspension unless authorized by the Commission."

5. 5 U.S.C.A. § 1007(b): " * * * All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

appearing therefor" the following statement:

" * * * upon reconsideration of the previous action in this proceeding, we are reasonably satisfied that the said schedules if permitted to become effective would not result in rates and charges, rules, regulations or practices which would be unjust and unreasonable, or result in rates and charges which purport to extend service beyond the area served by respondents, in violation of the Interstate Commerce Act." [6]

Under section 15(7), 49 U.S.C.A. § 15(7), the refusal or granting of suspension is a matter confided to the discretion of the Commission and no court has jurisdiction to review the Commission's decision unless it has refused to exercise discretion or has exercised it arbitrarily.[7] The plaintiffs so concede. Such discretionary orders are merely interlocutory steps preceding a hearing and decision as to the lawfulness of the proposed rates.[8] They may be made "pending" a hearing on the merits and without the introduction of testimony. While a suspension order must state reasons, the basis for the reasons we assume to be the expert knowledge of the members of the Suspension Board or the Division of the Commission, acting as an appellate division. This is not to be found however in the record of the proceeding before the Commission. Concededly it need not be recorded when suspension is denied, for then no reason whatever need be stated.

When suspension is granted, the authority of the Commission is, 49 U.S.C.A. § 15(7),

"to enter upon a hearing concerning the lawfulness of such rate * * * or practice; and pending such hearing and the decision thereon the commission, upon filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule * * * but not for a longer period than seven months beyond the time when it would otherwise go into effect; and after full hearing, * * * the commission may make such order with reference thereto as would be proper in a proceeding initiated after it had become effective. * * * "

The remaining provisions of the paragraph are not presently applicable, except the concluding provision that after September 18, 1940 the burden of proof shall be upon the carrier who proposes the rate, etc., to show that the latter is just and reasonable.

The narrow question with which this court is called upon to deal, is whether the order of February 20, 1956 vacating the prior action of Division 2 in granting suspension, is in such form as to reveal by its terms that this particular action reflected the exercise of discretion based on sound reasoning.

In considering the criticism voiced by the plaintiff of that order, it has been suggested that no more is required as to the content of the second order than was deemed to be sufficient in the first; and since that has not been questioned, its apparent sufficiency would vindicate the order of reversal, in all essential respects.

6. Conclusionary statements of reasons in a suspension order and in an order refusing to vacate it were held sufficient in Ferguson-Steere Motor Co. v. United States, D.C.N.D.Tex., 126 F.Supp. 588.

7. This long established rule is supported by a multitude of decisions. It will suffice to cite Board of Railroad Commissioners of State of North Dakota v. Great Northern R. Co., 281 U.S. 412, 429, 50 S.Ct. 391, 396, 74 L.Ed. 936, which states, "This power of suspension was intrusted to the Commission only. * * *"; Algoma Coal & Coke Co. v. United States, D.C.E.D.Va., 11 F. Supp. 487, 495; Carlsen v. United States, D.C.S.D.N.Y., 107 F.Supp. 398; National Water Carrier Ass'n v. United States, D.C.S.D.N.Y., 126 F.Supp. 87.

8. See Judge Davidson's concurring opinion in Ferguson-Steere Motor Co. v. United States, D.C.N.D.Tex., 126 F.Supp. 588, 591.

■ Since the first order is not the subject matter of this decision, comment upon its terms is not invited, but it may be conceded as a matter of logic that both orders should stand or fall by the same test; it is also true however, that if the second order should reveal, as we think it should, the exercise of a discretion based on sound reasoning, it does not follow that because the first order may have been wanting in that respect, the second must be sanctioned for the sake of following a textually insufficient precedent.

Attention is thus drawn to the form in which the order of February 20, 1956 is cast, embodying a conclusion but not its basis; and in that connection also, to the amendatory or supplemental order which has been ascribed to March 1 without a definite date having been made to appear. The latter merely states the negative of the proposition affirmatively set forth in the orders of November 15 and 23 quoted above, and is therefore no more revealing than they are in respect to a disclosure of the reasoning processes or the factual bases supporting the order.

The requirements of adequate procedure in this case invite consideration of the entire situation as disclosed in the argument and briefs which have been submitted to the court, although many matters so presented cannot enter into the present disposition of this motion for summary judgment. Thus it appears that the railroads filing the schedules seem to assert that as carriers they are not actually extending their rails into the Borough of Queens; also that they are not required to obtain a certificate of necessity as motor carriers although what they propose to do involves the operation of trucks hauling trailers from Jersey City into the possible terminal area of the Borough of Queens. Thus there is presented a rather complex state of transportation affairs which clearly invokes the special knowledge and insight of the Commission.

■ The peculiar position of the Long Island Rail Road which has been described above, arising from legislation designed to ameliorate a precarious financial status, is also something of which both the court and the commission are aware; it is not hereby intimated that in considering matters of suspension the Commission would be expected to take into consideration the financially infirm condition of a given carrier, but since the Long Island Rail Road is operating today under a special state statute which needed the sanction of the Interstate Commerce Commission to become effective, it would seem that there was a special reason here present to induce the Commission to go on record more explicitly and informingly than it has, in entering the order complained of.

Against the factual background which has been stated, we come now to the considerations which lead us to believe that the plaintiffs as suitors before the Commission may justly ask relief from the order of February 20, 1956.

In order to invoke the power to suspend a tariff of rates asserted to contemplate an adverse effect against which the Interstate Commerce Act is thought to afford protection, the plaintiffs were required in effect to present a prima facie case to the Board of Suspension.

Their initial effort was unsuccessful, but a favorable result attended the appeal to Division 2, which was embodied in the orders of November 15 and 23, 1955 above quoted, and an investigation was ordered. At that juncture the prima facie case had been shown. The subsequent reversal of February 20, 1956 was not based upon the introduction of any new facts or arguments, as we have been informed, but was directed on the original papers, after a change in the membership of Division 2.

It seems to us that these suitors were justly entitled to a recital of what it was that indicated the disappearance of the prima facie case, and the necessity for an investigation, namely, that the announced result was the exercise of a discretion based upon sound reasoning.

Such a requirement if met, might well have disposed of the protestants' case, once and for all, without inviting a trial

on the merits so to speak, which is the object of the Section 13, Interstate Commerce Act proceeding which has been initiated—as we are advised by the amended complaint filed at the time of argument.

We have been much aided in our study of this case by the decision in Amarillo-Borger Exp. v. United States, D.C., 138 F.Supp. 411, which we do not read to be in conflict with Ferguson-Steere Motor Co. v. United States, D.C., 126 F.Supp. 588.

■ We think that the meaning assigned to the expression "agency discretion" which occurs in the Administrative Procedure Act, § 10(a), 5 U.S.C.A. § 1009(a), as illuminated in the debate in the Senate, quoted in footnote 13 of Judge Brown's opinion in the Amarillo case, sufficiently indicates that not every exercise of an administrative function is to be sanctioned merely because the necessary power exists; that there may be occasions when the exercise of a given power should be accompanied by a fair and informing statement of the reasons which quickened it into action. Such an instance is believed to be present in this case, not only for the sake of the order under review, but for the effect that such a recital may have upon later aspects of the case.

Nor does the argument seem to be impressive that complexity of administration will be thereby promoted in connection with the large number of applications for suspension of rates with which the Commission is annually confronted. It is not to be anticipated that many of such applications will develop such appellate changes of position as we are dealing with here. Where they do occur, the presence of reasons must be presumed, and the requirement for formulating such reasons is not thought to add much to the initial burden entailed by any rational process.

We conclude therefore that we should vacate both the order of February 20, 1956 and the amended order of March 1, 1956 and remand the same to the Commission for reconsideration and revision in the respects above indicated.

The defendants' motion for summary judgment should be denied, and the case reserved for hearing upon the merits of the plaintiffs' application for an injunction, which may be brought on for hearing at the instance of any party. The temporary stay should be continued pending proceedings by the Commission not inconsistent with this opinion.

BRUCHHAUSEN, J., concurs.

SWAN, Circuit Judge (dissenting).

I think the case is before this court upon the plaintiffs' motion for an interlocutory injunction, as well as upon the defendants' written motion for summary judgment and dismissal of the complaint and their oral motion to vacate the temporary restraining order. In my opinion the temporary restraining order should be vacated, the plaintiffs' motion for an interlocutory injunction should be denied, and the defendants' motion to dismiss the complaint should be granted. Since my views have not persuaded my brothers I confess to some doubt as to their correctness, but I feel constrained to state them and will do so briefly.

Concededly the suspension orders of Division 2 were interlocutory orders. As such the Commission had power to vacate them prior to decision on the merits. This the plaintiffs concede. Their contention is that the power to vacate must not be exercised arbitrarily and that it was so exercised in this case. The argument appears to be that the vacating order of February 20 was made without mature deliberation and only because of an accidental change of membership of Division 2 due to the retirement of one of the former members. I see nothing in the record to support this argument. There was ample time for mature consideration after the filing of the petition for reconsideration and the objectors' replies thereto and before entry of the February 20 order. There is every reason to suppose that the new member of Division 2, as well as the former members,

cast their votes after mature deliberation and due consideration of the public interests involved.[1]

The plaintiffs' attack upon the "corrected order" of February 20, because it states conclusions which are the exact opposite of those stated in the suspension orders, I do not find persuasive. The statute, 49 U.S.C.A. § 15(7), does not require the Commission to state its reasons when suspension of proposed rates is denied; only when suspension is granted must reasons be stated. Since vacation of a prior suspension order has the effect of a denial of suspension thereafter, it may be doubted whether the vacating order need state reasons. But I will assume arguendo that it must and that the statement "good cause appearing therefor" in the first order of February 20 was an inadequate statement. However this may be, I think the "corrected order" contained a sufficient statement. It shows the ultimate reasons upon which Division 2 acted, namely, that "we are reasonably satisfied" that the schedules, if permitted to become effective "would not result in rates * * * which would be unjust and unreasonable, or result in rates and charges which purport to extend service beyond the area served by respondents, in violation of the Interstate Commerce Act." This is an adequate basis for the exercise of discretion.[2] There is no requirement in section 15(7) that the Commission explain the mental operations, often depending on expert knowledge in the field of transportation, by which it reached the basis for its discretionary action.[3]

Amarillo-Borger Exp. v. United States, D.C.N.D.Tex., 138 F.Supp. 411 held that an order vacating a prior order suspending proposed rates was void because it did not comply with the final sentence of section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b). With this conclusion I respectfully disagree. Section 10(a), 5 U.S.C.A. § 1009(a), which provides who shall be entitled to judicial review of agency action, states two exceptions in its opening words, the second being where "(2) agency action is by law committed to agency discretion." Concededly refusing or granting suspension of rates and the vacating of a prior order of suspension are matters entrusted to the discretion of the Commission, and its action is immune to court review unless it has abused its discretion. The decisions establishing this rule long antedate enactment of the Administrative Procedure Act. I find nothing in the legislative history of that Act to indicate Congressional intent to change the law in this respect. I think section 8(b) is inapplicable.

Discontinuance of the investigation under section 15(7) of the Interstate Commerce Act does not leave the plaintiffs without an administrative remedy for obtaining a ruling as to the lawfulness of the protested tariffs. Long Island has already filed a complaint pursuant to section 13, 49 U.S.C.A. § 13. Brooklyn Terminal can join in that pro-

1. See I. C. C. v. Jersey City, 322 U.S. 503, 513, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420:
"'Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. * * *' The Commission considered that it had, and we find no reason to doubt that it had, the evidence before it that was needful to the discharge of its duty to the public and to the regulated railroad."

2. See Judge Hutcheson's opinion in Ferguson-Steere Motor Co. v. United States, D.C.N.D.Tex., 126 F.Supp. 588, where reasons in the form of conclusions were held sufficient to sustain a suspension order and an order refusing to vacate it.

3. See I. C. C. v. Inland Waterways Corp., 319 U.S. 671, 691, 63 S.Ct. 1296, 1307, 87 L.Ed. 1655:
"Our function does not permit us either to prescribe or approve rates, and our decision carries no implication of approval of any rates here involved. Nor are we at liberty to prescribe general attitudes the Commission must adopt towards the exercise of discretion left to it rather than to courts. We decide only whether the Commission has acted within the power delegated to it by law."

ceeding. We may take judicial notice that the hearing in that proceeding has been set for a date in July 1956. I am of opinion that the plaintiffs have an adequate administrative remedy now pending.[4]

For the foregoing reasons I would dispose of the motions before us in the manner indicated at the outset of this opinion.

4. See National Water Carriers Ass'n v. United States, D.C.S.D.N.Y., 126 F.Supp. 87.