The **LONG ISLAND RAILROAD COMPANY**, Plaintiff,

v.

The **DELAWARE, LACKAWANNA & WESTERN RAILROAD COMPANY**, Lehigh Valley Railroad Company, Erie Railroad Company and The New York, Chicago and St. Louis Railroad Company, Defendants.

No. 16628.

United States District Court
E. D. New York.

July 2, 1956.

Otto M. Buerger, New York City, for plaintiff. George M. Onken, Brooklyn, N. Y., and James T. Gallagher, New York City, of counsel.

Rowland L. Davis, Jr., and Harold J. Gilmartin, New York City, for defendants Delaware, L. & W. R. Co. and New York, C. & St. Louis R. Co., Richard E. Costello, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Erie R. Co., Edwin S. S. Sunderland and Chester F. Leonard, New York City, of counsel.

Leonard P. Moore, U. S. Atty. for Eastern Dist. of New York, and Albert H. Buschmann, Asst. U. S. Atty., Brooklyn, N. Y., for the United States.

BYERS, District Judge.

There are before the court in this case in which the complaint was filed on June 15, 1956, a motion by plaintiff for a preliminary injunction pending trial of the issues tendered, and cross motions by defendants The Delaware, Lackawanna & Western R. Co. (D. L. & W.) and The New York, Chicago and St. Louis R. Co. (Nickel Plate) and Erie R. Co. (Erie), to dismiss the complaint under Fed.Rules Civ.Proc. rule 12(b), 28 U.S.C.A. for lack of jurisdiction over the subject matter, and for failure to state a claim, etc.

These motions were heard on June 20th and all briefs were received by the court on the 29th.

The matters in controversy have been heretofore explained in Civil Action 16321 in which an opinion was filed on May 9th of this year. Long Island Railroad Company v. United States, D.C., 140 F.Supp. 823. That case dealt with proceedings before the Interstate Commerce Commission in reference to the filing of tariffs by two of these defendant railroads, looking to the establishment of a so-called "piggy-back" service from railroad terminals in Jersey City, to various places in Queens County (i. e. Borough of Queens, New York City).

The intended purpose is to be accomplished by the discharge on arrival at their Jersey City Yards, of trailer trucks carried on flat cars by the railroads; and the motor vehicle hauling of them over highways, to the points of destination.

The plaintiff invokes the jurisdiction of this court to prevent the proposed operation on the theory that what is contemplated is in essence the extension of the lines of the railroads from their Jersey City Yards to the ultimate place of delivery; and that this cannot be legally accomplished in the absence of the grant of a certificate of convenience and necessity, according to the provisions of Section 1(18) of the Interstate Commerce Act, 49 U.S.C.A. § 1(18).

This is the first cause as pleaded in the complaint and is the object of attack by the D. L. & W., Erie and Nickel Plate in support of their argument that there is thus exposed no legal claim for relief because the court is confronted by controlling precedents, being court and

I.C.C. decisions, which require that the cause must be dismissed since it is doomed to fail.

Strictly this is not an argument addressed to the assertion that the court is without jurisdiction to entertain the cause.

Since it is clear that the function of deciding the issue of whether an extension of railroad lines is indeed contemplated, is judicial and not administrative, there is no occasion for discussion of the proposition.

Texas & Pacific Railway Company v. Gulf, etc., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578 and Powell v. U. S., 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643, leave no room for doubt that the jurisdiction of the court is exclusive, and hence must be entertained once it has been enlisted.

Whether or not there is reason to believe that the plaintiff is likely to prevail does not touch the duty to adjudicate.

It is true that both of the cited cases involved an extension of trackage, while this does not. However the question of whether there is involved what may be, with apparent reason, contended to be an extension of lines, is present and must be dealt with.

The motions to dismiss for lack of jurisdiction as to the plaintiff's first cause will be denied.

■ The next aspect of the defendants' motions is not so simple of disposition; the argument comes down to this: that in view of the decisions in New York Dock Ry. v. Pennsylvania R. Co., 3 Cir., 62 F.2d 1010, certiorari denied 289 U.S. 750, 53 S.Ct. 694, 77 L.Ed. 1495; Trailers etc., Eastern Dist., 296 I.C.C. 219; and Arlington & Fairfax Ext., 228 I.C.C. 479, this court is required to hold that the law has been so far settled against the plaintiff's asserted cause, that in legal effect the Long Island has failed to state any claim for relief of which the court can take cognizance.

It must be owned that the opinion in the New York Dock case contains language which goes far to sustain the argument.

What was there dealt with is described as pick-up and delivery service to and from shippers by the use of motor trucks. Presumably the trucks were owned and operated by the railroads. That is assumed to be the fact with reference to the trailer trucks here involved, which are loaded at the place of origin, taken by motor vehicle to and placed upon the flat cars, which are then hauled by railroad to Jersey City; then the trailer trucks are removed and later delivered, as has been stated.

Without venturing an opinion on the subject, it may be permitted to observe that a plausible argument might be made that the defendants' trailer trucks become such a part of their flat cars while in transportation, that when they are detached therefrom at Jersey City they could be likened to the "barges, car floats [and] lighters" referred to in the New York Dock case opinion as such an "instrumentalit[y] as would, in a given instance, constitute a 'line'." [62 F.2d 1013.]

This possible aspect of the controversy would of course turn upon the evidence to be adduced on a trial. Cf. United States ex rel. Arlington & F. Auto R. Co. v. Elgen, 68 App.D.C. 393, 98 F.2d 264.

The court as at present advised, cannot see that the plaintiff should be denied its day in court on the theory that it could not possibly make out a case, in spite of the holding of the I.C.C. in the Arlington Extension case.

■ If it is correct to say that the issue is for judicial determination, that Commission holding would have to be consulted but not accorded the status of *stare decisis*.

■ Sight has not been lost of the true object of the defendants' purpose which is to compete with the motor haulage industry, not to introduce competition with the Long Island, even though that may be a by-product of the effort. It seems clear however that even as an innocent bystander so to speak, the plaintiff should not be summarily dismissed as a litigant on the theory that it is not

**366**

within the protection intended by the applicable Sections of the Act.

The motion to dismiss for failure to state, etc. will therefore be denied.

■ The second cause presented by the plaintiff is directed to the proposition that in effect the defendants propose motor vehicle transportation without procuring a certificate of convenience and necessity which is requisite to the legality of such an operation under Section 206(1) of the Act, 49 U.S.C.A. § 306(1). The defendants' position is that their plan contemplates a transfer, collection or terminal service which railroads may render without such a certificate, under the exemption provisions of Section 202 (c) (1) of the Act, 49 U.S.C.A. § 302(c) (1).

Adjudication of this claim for relief involves the highly technical question of whether that which the defendants propose is actually within the terminal areas of the respective defendants.

At my request, counsel for the D. L. & W. have been at pains to quote many decisions of the I.C.C. which are not easily accessible to the court, from which it clearly appears that the periphery of a given terminal area can be established only as the result of a careful study of physical conditions brought to light in a given controversy. A quotation may be permitted:

In New York S. & W. R. Co.—Common Carrier Application, 46 M.C.C. 713, the Commission held that the terminal area of a rail carrier whose tracks terminated in New Jersey included the island of Manhattan as well as territory in New Jersey.

"* * * The act does not contain a definition of terminal area, but what the Congress had in mind is reasonably clear when the term is examined in the light of earlier decisions of the Commission. For many years prior to the enactment of section 202(c), discussions in reported cases of collection and delivery or transfer services had been marked by statements that such services were performed within or confined to, a 'terminal district' (citation of cases) or a 'terminal area.' * * * Thus, at the time Section 202(c) was enacted, the areas within which terminal services generally were performed, where terminal facilities were available, and where terminal handling of freight and other terminal operations occurred— in other words, the areas within which collection, delivery, or transfer services incidental to some line-haul or inter-community service were given—had acquired recognition as 'terminal districts' or 'terminal areas.' Clearly, it was with this meaning in mind that the term was used in section 202(c). In other words, the 'terminal area' of a particular carrier at any municipality which it serves, within the meaning of section 202(c), is the area within the limits of the municipality or immediately adjacent thereto within which it offers, either free or for an additional charge bona fide collection, delivery, or transfer service, as distinguished from line-haul service. The limit of such area is determined by the point at which transportation ceases to be bona fide transfer, collection, or delivery service and becomes line-haul service."

See also Trailers on Flat Cars, etc., supra.

Since the question now under discussion is primarily one which calls for the trained and expert insight of the I.C.C. if intelligent and informed processes are to attend its resolution, the court should wait upon the outcome of the Section 13 proceeding before the Commission which presents this question, before venturing a decision upon this aspect of the case; this is not to say that jurisdiction does not pertain to the court in respect of this issue.

■ If this conclusion means a severance of issues at the trial, the Federal Rules afford such an expedient.

The court considers the question to be so open concerning the likelihood that the plaintiff will succeed in obtaining a final injunction in connection with its first cause under Section 1(18) of the Act, that the grant of a temporary injunction is not deemed to be warranted, and plaintiff's motion is therefore denied.

The court will deny the motions to dismiss, and will retain jurisdiction of the case as a whole; the temporary restraining order will not be continued after July 5, 1956 except that an additional 5-day period will be added if plaintiff so seeks, but only to enable it to make suitable application to the Court of Appeals or a Judge thereof, in connection with an appeal from the order to be entered on this decision.

Settle order.