**HUMBLE OIL & REFINING COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 15704.**

United States Court of Appeals Fifth Circuit.

June 30, 1956.

Rehearing Denied Aug. 21, 1956.

Nelson Jones, Carl Illig, Houston, Tex., Bernard J. Caillouet, New Orleans, La., William J. Merrill, Houston, Tex., Bernard A. Foster, Jr., Washington, D. C., Rex G. Baker, Houston, Tex., Wm. H. Holloway, Tyler, Tex., Charles Janvier, New Orleans, La., Ross, Marsh & Foster, Washington, D. C., of counsel, for petitioner.

Willard W. Gatchell, Gen. Counsel for Federal Power Commission, Lambert McAllister, Asst. Gen. Counsel, C. Louis Knight, Atty., Washington, D. C., for respondent.

Before BORAH, RIVES, and BROWN, Circuit Judges.

BORAH, Circuit Judge.

This is one of six cases which presents a common question of law concerning the validity of orders of the Federal Power Commission suspending changes in rates for sales of natural gas by the respective petitioners.

Petitioner herein has invoked the jurisdiction of this Court under Section 19(b) of the Natural Gas Act to review an order of the Federal Power Commission issued on May 19, 1955, by which the Commission suspended for a period of five months a rate filed by petitioner covering certain of its sales of natural gas to United Gas Pipe Line Company.

The facts to the extent that they need be stated are these: By a contract dated February 9, 1954, petitioner agreed to sell natural gas to United for a term of nineteen years from the date of the initial delivery of gas thereunder, and deliveries commenced on June 1, 1954, which was six days prior to the date on which the Supreme Court handed down its decision in Phillips Petroleum Company v. Wisconsin, 347 U.S. 672, 74 S. Ct. 794, 98 L.Ed. 1035. As we set forth at length in Magnolia Petroleum Company v. Federal Power Commission, 5 Cir., 236 F.2d 785, the Commission thereafter issued its series of 174-Orders in which it promulgated rules and regulations providing for the filing of rate schedules by "independent producers" [1]

---

1. The term "independent producer" was defined in the regulations, 18 C.F.R. § 154.91, as "any person as defined in the Natural Gas Act who is engaged in the

of natural gas subject to the jurisdiction of the Commission in which schedules were to be set forth the terms and conditions of service and all rates and charges effective on and after June 7, 1954, for the transportation and sale of natural gas in interstate commerce. "Rate schedule" was defined in the regulations to mean "the basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954 * * *" And in respect to periodic increases contained in such basic contracts the regulations provided that: "The operation of any provision of the rate schedule providing for future or periodic changes in the rate, charge, classification, or service after June 7, 1954, or the operation of any like provision in any initial rate schedule filed after June 7, 1954, shall constitute a change in rate schedule." These regulations further provided that, with certain exceptions not here material, no change could be made in any such rate schedule without first filing a notice of change in rates not less than thirty nor more than ninety days prior to the effective date thereof pursuant to Section 4 (d) of the Natural Gas Act.

On September 24, 1954, petitioner filed under protest and with jurisdictional reservations the aforementioned contract of February 9, 1954, as amended, covering its sales of natural gas to United, which when filed was assigned a number and designated a "Rate Schedule" by the Commission. Under the terms of this contract, and to the extent here pertinent, the prices to be paid for all gas to be delivered to United during the life of the contract were stipulated to be as follows: during the one year period commencing on the date of first deliveries of gas thereunder (June 1, 1954 to June 1, 1955), 12.35 cents per Mcf., and during the period commencing on the expiration of the first one-year period and extending until November 1, 1955, 13.35 cents per Mcf. The contract also provided that

1.15 cents were to be added to each of the above-stated prices to cover a tax reimbursement of one cent per Mcf., and a service charge of .15 cents per Mcf. On April 21, 1955, in compliance with the regulations provided in the 174-Orders, but under like protest, petitioner filed with the Commission a notice to the effect that under and pursuant to the terms of its contract with United, the applicable price to be paid for gas delivered thereunder, effective June 1, 1955, would be 14.5 cents per Mcf. By an order issued May 19, 1955, the Commission ordered that a public hearing be held upon a date to be fixed by the Commission, and suspended the proposed changes in rates and charges "until November 1, 1955, and until such further time as it is made effective in the manner prescribed by the Natural Gas Act." The reasons for its action were stated by the Commission as follows: "The increased rates and charges proposed in the aforesaid filings have not been shown to be justified and may be unjust, unreasonable, unduly discriminatory or preferential, or otherwise unlawful." And its findings were that: "It is necessary and proper in the public interest and to aid in the enforcement of the provisions of the Natural Gas Act that the Commission enter upon a hearing concerning the lawfulness of the said proposed changes, and that the above-designated supplement be suspended and the use thereof deferred as hereinafter ordered." Following the issuance of the order of May 19, petitioner applied to the Commission for a rehearing thereof in which it sought to have the Commission "affirmatively recognize the validity and effectiveness of all components of the rate set forth in Humble's contract with United dated February 9, 1955 * * * including particularly the price thereby made effective on and after June 1, 1955, and that the Commission forthwith abrogate without hearing * * * or after such hearing * * * said order issued May 19,

production or gathering of natural gas and who transports natural gas in interstate commerce or sells natural gas in

interstate commerce for resale, but who is not primarily engaged in the operation of an interstate pipeline."

1955." The Commission, being of opinion that the grounds for rehearing alleged in the application did not present any question of fact or law not fully considered by it prior to the issuance of its May 19 order, and therefore did not warrant a rehearing, denied the application for rehearing by an order issued on June 20, 1955.

Following the denial of its application for rehearing, petitioner filed this petition for review together with a motion for stay pending review by this Court, urging in both pleadings that it is aggrieved and is suffering irreparable injury by reason of the fact that the revenues lost by it, alleged to be a net loss of $22,500 per month, cannot be recouped. In its petition for review, it claims that the order is invalid for numerous reasons, the most important of which are substantially as follows: (1) that the prices involved were contract prices and as such constituted the "initial" rate filed by petitioner which is not subject to suspension under Section 4 of the Natural Gas Act; (2) that the order does not contain "a statement in writing of its reasons for such suspension" as is required by Section 4(e) of the Act; (3) that the order is arbitrary, capricious, and unduly discriminatory, contrary to the provisions of the Natural Gas Act and to the Commission's announced rate policy; and (4) that the action of the Commission abrogates petitioner's contract and constitutes a confiscation of its property without due process of law, contrary to the provisions of the Fifth Amendment to the Constitution of the United States. The Commission, in turn, filed a motion to dismiss the petition for review and to deny the motion for stay on the grounds that this Court has no jurisdiction under Section 19(b) of the Act to review or to stay the order because it is not a definitive order entered after hearing and completion of the administrative process, and that in any event petitioner has failed to show legally cognizable irreparable injury or that the equities justify the issuance of a stay. Upon consideration of petitioner's motion for stay and the Commission's opposition thereto, this Court on August 25, 1955, issued an order denying the stay.

■ The questions presented by the petition and the motion to dismiss include the reviewability and, if reviewable, the validity of the Commission's order. The question of reviewability necessarily involves a determination of whether we have jurisdiction to review such order under Section 19(b) of the Natural Gas Act. In Magnolia Petroleum Company v. Federal Power Commission, supra, we observed that this statutory review provision of the Act contemplates a review by this Court of definitive orders entered after hearing and upon completion of the administrative process, and what we said there with regard to the conditions necessary for our review of the Commission's action is controlling here.

■ Applying this test of reviewability, we have here a situation where the Commission, exercising its regulatory jurisdiction and acting under one of the sections of the Act which do not require a hearing, has consistent therewith entered an order without a hearing first had. Applicable Section 4(e), in pertinent part, provides: "Whenever any such new schedule is filed the Commission shall have authority * * * *to enter upon a hearing* concerning the lawfulness of such rate, charge, classification, or service; and, *pending such hearing and the decision thereon,* the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect * * *." Moreover, the order in question is in no proper sense a definitive order. It is a mere procedural step taken at the inception of and not upon the completion of the administrative process. A realistic appraisal of the order and the

function it performs demonstrates that it is interlocutory and that its issuance had but one objective in view, to maintain the status quo between seller and purchaser pending the exercise of the Commission's statutory jurisdiction to inquire into the reasonableness of the rate increase.

As supportive of its claim that the suspension order here involved is reviewable, petitioner relies upon Atlantic Seaboard Corporation v. Federal Power Commission, 4 Cir., 201 F.2d 568, 572, but we think that case is clearly distinguishable from the case at bar. Consistent with what we have said above, the Court citing Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408, there recognized that Section 19(b) gives the Courts of Appeals power to review an order of the Commission upon the petition of a party aggrieved and that mere preliminary or procedural orders or orders which do not finally determine rights of the parties should not be reviewed thereunder. On the facts there presented, however, the Court concluded that the order there sought to be reviewed was not of that sort, but instead was "sufficiently distinct from the general subject of the litigation and sufficiently final and definitive to justify us in exercising the power of review vested in us by the statute." Thus, it is apparent that the Court did not undertake in the Atlantic case to review an interlocutory order, such as the one we have here, which is not definitive under the announced test for reviewability under Section 19(b).

■ What is really sought by petitioner is that this Court should halt inquiry at the threshold in order to rule *in limine* upon the propriety of the Commission's action and whether it should proceed further. It may be desirable that the law should provide for a preliminary judicial review of questions of this kind, but in the absence of such a provision we cannot assume that power. If petitioner is correct in any or all of its several contentions relating to the validity of the order, this interlocutory suspension order may infect with invalidity the final, definitive order of the Commission which will issue after hearing had and findings made upon evidence. In that event, upon judicial review of the definitive order, the interlocutory order will be reviewable insofar as it may have affected the final order. The conclusion we have reached that this Court has no jurisdiction to review the suspension order at this time, renders it both inappropriate and unnecessary to pass upon the contentions that the prices involved constituted "initial rates", that the Commission failed to state "reasons" for such suspension as required by the Act, and that the order is contrary to the Natural Gas Act and violates petitioner's rights under the Fifth Amendment to the Constitution of the United States. The petition accordingly will be dismissed for the reason that Section 19 (b) of the Act does not confer upon this Court jurisdiction to entertain it and it is so ordered.

JOHN R. BROWN, Circuit Judge, dissenting. For dissenting opinion see 236 F.2d 785.

### On Petition for Rehearing

PER CURIAM.

As neither of the judges who concurred in the decision of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same is hereby, denied.

JOHN R. BROWN, Circuit Judge, dissents.