ATLANTIC COAST LINE RAILROAD COMPANY, Seaboard Air Line Railroad Company, Florida East Coast Railway Company and Southern Railway Company

v.

UNITED STATES of America

and

Interstate Commerce Commission.

Civ. A. No. 2794.

United States District Court
E. D. Virginia,
Norfolk Division.

Nov. 5, 1958.

Russell T. Bradford, Norfolk, Va., Albert B. Russ, Jr., Prime F. Osborn, Wilmington, N. C., Charles P. Reynolds, Donal L. Turkal, Richmond, Va., Russell L. Frink, Harold B. Wahl, Jacksonville, Fla., Arthur J. Dixon, James A. Bistline, Washington, D. C., Carl Helmetag, Jr., Philadelphia, Pa., for plaintiffs.

L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., Victor R. Hansen, Asst. Atty. Gen., James E. Kilday, E. Riggs McConnell, Attys., Dept. of Justice, Washington, D. C., for United States.

Robert W. Ginnane, Gen. Counsel, H. Neil Garson, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

John P. Harper, Norfolk, Va., William H. Armbrecht, Mobile, Ala., Warren Price, Jr., Washington, D. C., for intervening defendant, Pan-Atlantic S.S. Corp.

Before HAYNSWORTH, Circuit Judge, HUTCHESON, Chief Judge and HOFFMAN, District Judge.

STERLING HUTCHESON, Chief Judge.

In this action the plaintiffs and intervenors seek to have set aside and enjoined the enforcement of an order of the Interstate Commerce Commission, Division 2, acting as an appellate division, entered August 7, 1958, in the proceeding entitled Frozen Citrus Products—Florida to Official New England Points, Investigation and Suspension Docket No. 6985. The facts may be briefly stated as we do not deem it necessary to recite the background upon which the issue is cast.

On or about November 2, 1957, Pan-Atlantic Steamship Corporation, herein-

after referred to as Pan-Atlantic, filed schedules seeking reduced rates on frozen citrus products subject to minimum weights of 36,000 pounds and 80,000 pounds in connection with its trailers-ship operations whereby it transports highway trailers on the decks of vessels to become effective December 4, 1957.

On November 29, 1957, the Commission in I & S Docket No. 6847, Fresh and Frozen Foods—Sea Land—Pan-Atlantic S.S. Corporation, entered into an investigation of the lawfulness of the rates and suspended the rates pending the investigation for the full statutory period from December 4, 1957, to and including July 3, 1958.

During the pendency of the investigation, at the expiration of the suspension period on July 3, 1958, Pan-Atlantic under the provision of Section 307(g) of the Interstate Commerce Act, 49 U.S. C.A. § 907(g), permitted the rates to become effective. The rates are now in effect and will so remain during and after this proceeding until the Commission reaches a final determination concerning their lawfulness.

On July 7, 1958, Pan-Atlantic filed a tariff on frozen citrus products to become effective August 9, 1958, containing the same rates which were under investigation in I & S Docket No. 6847 above mentioned, with the exception that they were made subject to lower minimum weights of 35,000 and 70,000 pounds.

On July 25, 1958, the plaintiff rail carriers filed a protest with the Commission pointing out that with the exception of the lower minimum weights these rates are the same as those now under investigation and they requested a suspension order.

On August 4, 1958, Pan-Atlantic filed its reply, stating that the tariffs were filed to effect operating economies because of an inadvertent error committed in publishing the rates subject to higher minimum weights than those permitted by state law to be transported by motor carriers in the same vehicle over certain highways involved.

On August 5, 1958, the Board of Suspension suspended the rates and on August 6, 1958, Pan-Atlantic by telegram which was amended on August 7, 1958, filed a petition pointing out that it had erred in fixing the prior higher minimum weights and that to comply with the weight restrictions on vehicles operated over highways, particularly in New Jersey, it was necessary to reduce the minimum weights to 35,000 and 70,000 pounds. By so doing it would be possible to effect economies in operation by transporting the lower minimum weight on one trailer instead of on two and the higher minimum weight on two trailers instead of three. Pan-Atlantic agreed to make the new schedules subject to orders of the Commission, resulting from the investigation in I & S Docket No. 6847. It also requested the Commission to waive its rule with respect to the time for filing replies. On the same day Division 2, acting as an appellate division, voted to waive the rule for filing replies, granted the petition to vacate the suspension order and discontinued the proceedings, thereby allowing the proposed rates to go into effect on August 9, 1958. Several separate orders were entered, one to correct a clerical error indicating that the suspension order was granted by the Board of Suspension rather than by Division 2, acting as an appellate division, and one amplifying the reasons for vacating the order of suspension. These facts are not of importance but are mentioned in passing.

The factual situation presented is closely analogous to those appearing in Amarillo-Borger Express v. United States, D.C., 138 F.Supp. 411; Long Island Railroad Company v. United States of America, D.C., 140 F.Supp. 823; and Dixie Carriers Inc. v. United States of America, D.C., 143 F.Supp. 844. Those cases appear directly in point and we regard the reasoning contained in the opinions as sound.

■■ While we fully recognize the important principle that the action of

the Commission is not subject to review until administrative remedies have been exhausted, that is not the controlling consideration before us. We are not concerned with the power of the Commission to decline to enter a suspension order. The question presented is whether the Commission, once having entered a suspension order, may properly vacate the same without first affording the interested parties a hearing. Involved in this question is whether the action of the Commission in vacating the suspension order is reviewable. For the reasons set forth in the cases cited we hold that it is reviewable. We hold further that the order was improper because it was entered without any opportunity being afforded the protesting carriers to be heard. This we consider essential to the validity of such order. It is contended that the Commission has the power to suspend its rules of practice and consequently Rule 1.200(b), which provides that an interested party may file and serve a reply to the petition for reconsideration within twenty days after the filing of such petition, is not binding upon the Commission in the exercise of its general discretion.

[3] As in the cases cited, the several orders vacating the suspension order failed to contain an adequate statement of the underlying reasons for the action of the Commission and therefore do not satisfy the requirements of the Administrative Procedure Act, 5 U.S.C. A. § 1001 et seq., but we do not base our conclusion here upon that insufficiency. The fatal deficiency here is the lack of an opportunity for the protestants to be heard before the action was taken by the Commission. It is our view that even in the absence of such rule under the facts before us, the interested parties should be afforded an opportunity to reply to the petition seeking a reconsideration of the order of suspension. Only in this way can the Commission have before it such facts as may be in the possession of the interested parties bearing upon the propriety of vacating the suspension order previously issued.

It follows that the order entered on August 7, 1958, including the corrected order entered on August 7, 1958, and the second corrected order entered on August 7, 1958, vacating the suspension order of August 5, 1958, must be declared void and its enforcement enjoined. The proceedings will be remanded to the Commission for further action not inconsistent with the views here expressed as though the orders here declared void had not been entered. The injunction will prohibit the use or application of tariff rates and schedules which became or were permitted to become effective by reason of the vacation of the suspension order entered by the Commission as if the suspension order of August 5, 1958, had not been vacated, but without prejudice to further proceedings before the Commission for a vacation of the suspension or other relief and without restriction upon the exercise by the Commission, in a proper proceeding, of the discretionary powers vested in it.