275 F.2d 628
 107 U.S.App.D.C. 170
 Boyd S. LEEDOM, et al., Individually and as Chairman and
Members of and constituting the National Labor
Relations Board, Appellants
v.
NORWICH, CONNECTICUT PRINTING SPECIALTIES AND PAPER PRODUCTS
UNION, LOCAL NO. 494, and International Printing
Pressmen and Assistants' Union of North
America, AFL-CIO, Appellees.
 No. 15381.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 4, 1960.
Decided Feb. 18, 1960.
 
 Mr. Norton J. Come, Deputy Asst. Gen. Counsel, N.L.R.B., with whom Messrs. Thomas J. McDermott, Associate Gen. Counsel, N.L.R.B., and Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., were on the brief, for appellants.
 Mr. Warren Woods, Washington, D.C., for appellees.
 Mr. Edward G. Villalon, Washington, D.C., also entered an appearance for appellees.
 Before FAHY, BASTIAN and BURGER, Circuit Judges.
 FAHY, Circuit Judge.
 
 
 1
 The members of the National Labor Relations Board, to whom we shall refer as the Board, appeal from an order of the District Court granting a preliminary injunction against the Board in an action by two labor organizations, one the Norwich, Connecticut Printing Specialities and Paper Products Union, Local No. 494, referred to as Local 494, and the other the International Printing Pressmen and Assistants' Union of North America, AFL-CIO, referred to as the International. The appeal is also from denial by the court of the Board's motion to dismiss the complaint.
 
 
 2
 The court enjoined an election directed by the Board to be held in a bargaining unit composed, with certain immaterial exceptions, of the production and maintenance employees of a paper box plant of the Employer, Robertson Paper Box Company, at Montville, Connecticut.[1] The basis for the injunction was the claim of Local 494 and of the International that the Employer's craft employees, to wit, its printing pressmen, cutting and creasing pressmen, apprentices, helpers and related employees consisting of die makers, ink makers and plateroom employees, were an appropriate unit entitled to an election in a unit limited to such craft grouping, to the end of being able to vote for or against separate representation on a craft basis, said to be required by Section 9(b)(2) of the Labor-Management Relations Act, 61 Stat. 136 (1947), 29 U.S.C. 141-168 (1958), 29 U.S.C.A. 141-168.
 
 
 3
 Our question is not whether on the one hand the unit sought by Local 494 and the International, or, on the other hand, the unit fixed by the Board, is the appropriate bargaining unit, but whether the Board in reaching its decision as to the unit disregarded any statutory limitation upon the discretion vested in the Board by section 9(b) of the Act; that is, whether the craft employees were denied a statutory right.[2] If the latter, the District Court, under the authority of Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, affirming 101 U.S.App.D.C. 398, 249 F.2d 490, should be upheld in granting the preliminary injunction and in the dismissing the complaint. If the Board merely exercised the discretion available to it, however,[3] the District Court was without jurisdiction and erred in enjoining the election. Review of the appropriateness of the unit in that event could be had only in a proceeding in a United States Court of Appeals under section 10(e) or 10(f) of the Act.[4] National Biscuit Div. v. Leedom, 105 U.S.App.D.C. 117, 119, 265 F.2d 101, 103, certiorari denied359 U.S. 1011, 79 S.Ct. 1151, 3 L.Ed.2d 1037.
 
 
 4
 Appellees claim the Board violated the proviso in section 9(b)(2), supra note 3, which prohibits the Board from deciding that a craft unit is inappropriate 'on the ground that a different unit has been established by a prior Board determination * * *.' We are not able to sustain this contention.
 
 
 5
 In its original Decision and Direction of Election, supporting a statement in the text of the Decision that the production and maintenance employees at the plant, with certain exclusions, were an appropriate unit, the Board in a footnote stated, as set forth more fully in the margin,[5] that the Pressmen (the International) had represented this overall unit since 1945 and had also negotiated for a new contract on that basis until the instant petition was filed, though the Pressmen now contended for both a craft unit and also a separate other unit composed of the production and maintenance employees other than the craftsmen. Even could this reference to prior history properly be construed as basing the decision on the ground that a different unit had been established by a prior Board decision, violating the restraint imposed on the Board by section 9(b)(2), we think the Supplemental Decision and Second Direction of Election, the one enjoined, cured any such possible violation of that section. The Supplemental Decision and Second Direction of Election called for an election on a plantiwde basis, that is, in the same unit as previously. But it relied for the unit determination on evidence, introduced by the Employer at a reopened hearing, to the effect that Local 494, as distinguished from the usual 'Printing Pressmen' locals of the Internal, was not a craft union and had not traditionally organized or represented employees on a craft basis. The Board detailed to a considerable extent the evidence to this effect, including a reference in the International's constitution to 'printing specialty and paper products workers covered on an industrial basis,' and concluded that Local 494 was not a craft but an industrial union. It then stated that additional support for this position was found in the fact that the Local itself had represented the employees here involved on an overall production and maintenance basis for thiretten years prior to the instant petition. The Board relied on American Potash & Chem. Corp., 107 N.L.R.B. 1418 (1954), in which it was held that severance from a plantwide unit will be allowed 'where a true craft group is sought and where, in addition, the union seeking to represent it is one which traditionally represents that craft.' Id. at 1422. On the ground that Local 494 was not a traditional representative of a craft union, the Board denied craft severance.
 
 
 6
 We do not find in the foregoing a violation of section 9(b)(2). The Board decision that the craft unit was inappropriate was not on the ground that a different unit had been established by a prior Board determination, but on the ground that the union seeking the craft unit was not a traditional representative of a specific craft. The mere reference to past bargaining history for 'additional support' we think cannot be construed in the circumstances of this case as deciding 'that any craft unit is inappropriate * * * on the ground that a different unit has been established by a prior Board determination.'
 
 
 7
 The soundness of the American Potash doctrine is not before us; for, as we see the matter, that doctrine lies within the discretionary area of Board unit determinations.[6] Whether or not the Board has wisely exercised its discretion in formulating or applying the doctrine is apart from the question whether the Board has failed to give effect to a clear statutory command in this case, so as to justify intervention by the District Court in the normal process of determining an appropriate bargaining unit under the Act.
 
 
 8
 The preliminary injunction is set aside and the case is remanded to the District Court with directions either to dismiss the complaint or to take such further action as is not inconsistent with this opinion.
 
 
 9
 It is so ordered.
 
 
 
 [1]
 The election was to be for the purpose of determining whether these employees chose to be represented by the General Teamsters, Chauffeurs and Warehousemen Local No. 493, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, by plaintiff Local No. 494, by the United Mine Workers of America, District 50, by the United Papermakers and Paperworkers, AFL-CIO, or by none
 
 
 [2]
 No constitutional right is asserted to have been denied
 
 
 [3]
 Section 9(b) of the Act provides in pertinent part:
 'The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That the Board shall not * * * (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation * * *.'
 
 
 [4]
 Section 9(d) of the Act provides that upon petition for enforcement or review of an order of the Board certification proceedings may be made a part of the record to be reviewed
 
 
 [5]
 The footnote reads in full:
 The Petitioner (Teamsters' Local No. 493), the UMW, and the Papermakers, seek the existing overall production and maintenance unit. The Pressmen, which has represented this overall unit since 1945 as a result of a consent election, now contends, however, that this unit should be divided into one alleged craft unit of printing pressmen and various other employees, and another unit of the remaining production and maintenance employees. The Pressmen not only has represented the overall unit since 1945, but negotiated for a new contract on that basis until the instant petition was filed, with the negotiations being terminated then only by the Employer because of the filing of the petition. In such circumstances, we find that the Pressmen's unit position here is wholly inconsistent with its unit position in collective bargaining with the Employer, and that it will not effectuate the purposes of the Act to permit the alleged craft severance which it now seeks. See American Radiator and Standard Sanitary Corporation, 119 N.L.R.B. No. 32, and cases cited. Accordingly, we shall direct an election in the existing overall production and maintenance unit.
 
 
 [6]
 For a successful attack on a particular application of the American Potash doctrine, see N.L.R.B. v. Pittsburgh Plate Glass Co., 4 Cir., 1959, 270 F.2d 167, certiorari denied 80 S.Ct. 407. There, on review of a final order of the Board pursuant to section 10(e) of the Act, the court held the Board's permission of craft severance by a numerically small craft union in a highly integrated plant was arbitrary and discriminatory, notwithstanding the union was a true craft union and a traditional representative of that craft