**LONG ISLAND RAIL ROAD COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant,

Interstate Commerce Commission and The New York, Chicago and St. Louis Railroad Company, Intervening Defendants.

Civ. No. 61 C–145.

United States District Court
E. D. New York.

April 20, 1961.

Otto M. Buerger, Jamaica, N. Y. (Richard H. Stokes, New York City, of counsel), for plaintiff.

B. Franklin Taylor, Jr., Assoc. Gen. Counsel, Interstate Commerce Commission, Washington, D. C. (Lee Loevinger, Asst. Atty Gen., Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., John H. D. Wigger, Atty., Dept. of Justice, and Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, Washington, D. C., on the brief, for defendants the United States and Interstate Commerce Commission).

Clark, Carr & Ellis, New York City (Kemper A. Dobbins, Cleveland, Ohio, of counsel), for defendant New York, Chicago and St. Louis R. Co.

Before FRIENDLY, Circuit Judge, BRUCHHAUSEN, Chief Judge, and RAYFIEL, District Judge.

FRIENDLY, Circuit Judge.

The Long Island Rail Road Company seeks to enjoin an order of the Interstate Commerce Commission, dated October 7, 1960, which intiated an investigation of a routing restriction in a tariff and suspended the restriction in the meanwhile, and also various procedural orders entered thereafter. The Commission and The New York, Chicago and St. Louis Railroad Company, better known as the Nickel Plate, have intervened as defendants. The action has been submitted on the prayers for both temporary and final relief. We hold that we lack jurisdiction to review the procedural orders and that the Long Island has not met the exceedingly stringent standards required to warrant judicial interference with a suspension order.

The controversy concerns rates for the transportation of "partitions, other than rolling" from Cleveland, Ohio, to New York, N. Y. Until the summer of 1960 these moved under a class rate of $1.40 per cwt. This was available to New York, N. Y. stations on the Long Island by a variety of routings including one over the Nickel Plate and the Lackawanna. On July 14, 1960, the Chairman of the General Freight Committee-Eastern Railroads submitted to the carriers a proposal for a reduced commodity rate of $1.37 per cwt. from Cleveland to New York in order to meet truck competition. The suggested routing was "Class rate routes". The proposal stated that in the absence of objection within 20 days "the views of all members will be recorded in the affirmative and an announcement will be made accordingly." The Long Island advised the Committee that, as applied to its stations, routing would be subject to individual concurrence. Only the Pennsylvania having requested and received such a concurrence, the Traffic Executive Association-Eastern Railroads as agent published Supplement 127 to Tariff I.C.C. C–17, effective Oct. 10, 1960, Item 8536 of which provided for the $1.37 rate, with a restriction reading as follows:

"When for account of the L. I., will only apply when routed via PRR, Greenville Piers, N. J. or Jersey City, N. J. Float—Long Island City (New York), N. Y., L. I."

But for this exception, the $1.37 commodity rate would have been subject to the general provision, in Item 19,000 of Tariff C–17, that all rates "apply by all

4

routes made by the use of the lines of any of the carriers parties to this tariff"; the effect of the restriction was that, as regards Long Island stations, the $1.37 rate from Cleveland would apply only via the Pennsylvania and all other routings would continue to carry the $1.40 rate. Hence, as a practical matter, partitions from plants on the Nickel Plate in Cleveland destined to New York stations on the Long Island would move over the Pennsylvania, with the Nickel Plate receiving only a switching charge absorbed out of the Pennsylvania's division for the line haul.

The Nickel Plate petitioned the Commission to suspend the quoted restriction; the Commission's Board of Suspension voted against this. The Nickel Plate then appealed to Division 2 and formally requested the Long Island for a concurrence. The concurrence was refused but the appeal succeeded. On Oct. 7, 1960, the Commission issued an order instituting an investigation into the lawfulness of the routing restriction and suspending this until May 9, 1961, the maximum period permitted by 49 U.S.C.A. § 15(7); the portion of this order relating to suspension is here sought to be annulled. There followed a barrage of letters, memoranda, petitions, and replies, of which it is unnecessary to say anything save that they resulted in two other orders, also here sought to be reviewed, one setting the case for expedited hearing "under modified procedure", with the Long Island directed to file an opening statement of facts and argument, and the other denying a petition for reconsideration both as the petition sought a vacating of the suspension order and as it requested that the burden of proof be cast upon the protestant, the Nickel Plate, rather than on the Long Island.

The complaint was filed in this court on Feb. 23, 1961, and Judge Rayfiel issued an order temporarily restraining the Commission from proceeding or requiring the Long Island to proceed in the investigation and suspension proceeding. The parties later agreed that the restraint should continue until determination of this action. A court of three judges was convened, 28 U.S.C. §§ 2321–2325; although the court has been ready to hear the parties at any time, argument was presented only on April 7, 1961.

■ We can readily dispose of so much of the complaint as asks us to set aside the Commission's ruling that the burden of proof was on the Long Island rather than the Nickel Plate—this being the only attack on the two later orders that is pressed. This attack falls within the many decisions that such a procedural direction is not an "order" within 28 U.S.C. §§ 1336 and 1398, the modern embodiment of the Urgent Deficiencies Act, 38 Stat. 208, 219 (1913), 28 U.S.C. §§ 2321–2325, or other statutes of like tenor, but may be considered only upon review of further agency action. It suffices to cite United States v. Illinois Central R. Co., 1917, 244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007; F. P. C. v. Metropolitan Edison Co., 1938, 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408; Eastern Utilities Associates v. S. E. C., 1 Cir., 1947, 162 F. 2d 385; and, particularly, United Gas Pipe Line Co. v. F. P. C., 3 Cir., 1953, 206 F.2d 842.

■ Defendants contend the same principle deprives us of jurisdiction to review the suspension order. Conceding that a court may not inquire into the wisdom of such an order, the Long Island insists there is jurisdiction where the Commission is alleged to have failed to follow required procedures, or to have exceeded its statutory powers as is claimed here. The threshold issue is whether courts have even this limited power.

Numerous decisions, both before and after the demise of the "negative order" doctrine in Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 59 S. Ct. 754, 83 L.Ed. 1147, have held refusals by the Commission or other regulatory agencies to exercise their suspension powers to be unreviewable. A few are M. C. Kiser Co. v. Central of Georgia Ry. Co., D.C.S.D.Ga.1916, 236 F. 573, affirmed 5 Cir., 1917, 239 F. 718; National

Water Carriers Ass'n v. United States, D.C.S.D.N.Y.1954, 126 F.Supp. 87; Luckenbach S.S. Co. v. United States, D.C.D.Del.1959, 179 F.Supp. 605, judgment vacated as moot 1960, 364 U.S. 280, 80 S.Ct. 611, 4 L.Ed.2d 1719; Bison S.S. Corp. v. United States, D.C.N.D.Ohio 1960, 182 F.Supp. 63; but see Isbrandtsen Co. v. United States, 1954, 93 U.S. App.D.C. 293, 211 F.2d 51, certiorari denied Japan Atlantic and Gulf Conference v. United States, 1954, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124. Where the Commission has issued a suspension order and then vacated it, a slight preponderance of authority supports limited reviewability of the second order. Amarillo-Borger Express, Inc. v. United States, D.C.N.D.Tex.1956, 138 F.Supp. 411, judgment vacated as moot, 1957, 352 U.S. 1028, 77 S.Ct. 594, 1 L.Ed.2d 598; Long Island R.R. Co. v. United States, D.C.E.D.N.Y.1956, 140 F.Supp. 823; Dixie Carriers, Inc. v. United States, D. C.S.D.Tex.1956, 143 F.Supp. 844; Atlantic Coast Line R.R. Co. v. United States, D.C.E.D.Va.1958, 173 F.Supp. 871. On the other hand, Judge McGuire in the District of Columbia has refused to convene a three judge court to review such an order, National Motor Freight Traffic Assn., Inc. v. United States, Civil No. 1689–60, (unreported); a three judge court appears to have dismissed a complaint seeking such relief in Helm's Express, Inc. v. United States, Civil No. 17904 (W.D.Pa.1959) (unreported); and a district judge who was a member of that court has dismissed a complaint in a similar case, American Commercial Barge Line Co. v. United States, Civil No. 60–751 (W.D.Pa.) (unreported). The writer of this opinion must confess some difficulty in finding satisfactory grounds for reconciling the decisions that the vacating of a suspension order is reviewable even on the limited basis suggested in the cases so holding, with the generally accepted view that a refusal to suspend is not (save perhaps when the latter rests on an erroneous belief as to lack of power), see Swan, C. J., dissent-

ing in Long Island R. R. Co. v. United States, supra, 140 F.Supp. at page 828. Still, so long as that decision is the law of this district, it tends to support the thesis that a suspension order, which in some ways presents a stronger case for reviewability, is not wholly immune from judicial scrutiny.

On the specific issue of the jurisdiction of the courts to review suspension orders, the authorities are divided. The Government, resisting reviewability, cites Manhattan Transit Co. v. United States, D.C.D.Mass.1938, 24 F.Supp. 174; Ferguson-Steere Motor Co. v. United States, D.C.N.D.Tex.1954, 126 F.Supp. 588; Consolidated Truck Service, Inc. v. United States, D.C.N.J., 193 F.Supp. 773, and dealing with an order of the Federal Power Commission, Humble Oil & Refining Co. v. F. P. C., 5 Cir., 1956, 236 F.2d 819, certiorari denied 1957, 352 U.S. 967, 77 S.Ct. 354, 1 L.Ed.2d 321. The last two decisions support the Government's position; the first does not leave us convinced that the decision went on lack of jurisdiction rather than of merit, — a distinction which, of course, is easily blurred if "abuse of discretion" is the test both of reviewability and of result. In the second, while District Judge Davidson's concurring opinion went all the way the Government urges, Chief Judge Hutcheson declined to go beyond saying that any power of review for abuse of discretion was exceedingly limited, and District Judge Atwell dissented. Against the Fifth Circuit decision in the Humble case, delivered over a strong dissent by Judge Brown, Magnolia Petroleum Co. v. F. P. C., 5 Cir., 1956, 236 F.2d 785, 808–810, stand Atlantic Seaboard Corp. v. F. P. C., 4 Cir., 1953, 201 F.2d 568 and Phillips Petroleum Co. v. F. P. C., 10 Cir., 1955, 227 F 2d 470. And in Hudson and Manhattan R. R. Co. v. United States, Civ. 67–312 (S.D.N.Y.1951) (unreported), the Court seems to have considered a suit which sought to enjoin a suspension order on the ground that the Commission's "statement in writing of its reasons for such suspension" required by §

15(7), was inadequate, although making such short shrift of the contention that again it is hard to say whether the decision was jurisdictional or on the merits.

Plainly a suspension order is not "final" in the sense of 28 U.S.C. § 1291, namely, one that ends the proceeding, leaving nothing save ministerial acts for the ordering agency to perform. Catlin v. United States, 1945, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911. However, unlike 28 U.S.C. § 1291, or certain other acts relating to the review of agency action, see e. g., 29 U.S.C.A. § 160(f), and 5 U.S.C.A. § 1032, the statutes providing for review of orders of the Interstate Commerce Commission, 28 U.S.C. §§ 1336, 2321–2325, do not use the word "final"; any requirement in that sense comes from judicial interpretation. Neither is such a requirement derivable from § 10(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(c); finality is there specifically required only for "agency action for which there is no other adequate remedy in any court", not for "agency action made reviewable by statute." A suspension order does not fall within the classic characterization of an unreviewable order in Mr. Justice Brandeis' opinion in United States v. Los Angeles & S. L. R. R., 1927, 273 U.S. 299, 309–310, 47 S.Ct. 413, 71 L. Ed. 651. It would be trifling with reality to say that such an order "does not command the carrier to do, or to refrain from doing, any thing", simply because the order nominally does this only for seven months, although practically it is likely to do so for much more, Amarillo-Borger Express, Inc. v. United States, supra, 138 F.Supp. at page 414 footnote 3; the consequences of a temporary restraint, command or authorization, see Algonquin Gas Transmission Co. v. F. P. C., 1 Cir., 1953, 201 F.2d 334, 337–338, can be very serious. Neither ought review of a suspension order always be deemed forbidden by the "exhaustion" doctrine, admirably treated in 3 Davis, Administrative Law Treatise (1958), c. 20, see particularly § 20.05, cf. F. P. C. v. Arkansas Power & Light Co., 1947, 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261, reversing 1946, 81 U.S.App.D.C. 178, 156 F.2d 821. To say that the agency may be persuaded at the subsequent hearing to take a different view about what it has suspended is simply to say that the suspension order is a temporary, not a final, order, which is where we began. Whether the Long Island met the exhaustion requirement here is a different matter; this we shall consider below.

The objection to judicial review of suspension orders even on the most limited basis stems rather from another set of considerations, namely, that the mere possibility of resort to the courts may seriously interfere with the administrative agency's effective performance of functions where speed is of the essence. The danger would be most acute if courts were to review for alleged abuse of discretion, or to insist on a hearing or elaborate findings with which Congress, for the soundest of reasons, has dispensed. But even if all this be excluded and review confined to departure from statutory norms, there remains the risk, limned in another area by Mr. Justice Brennan's dissent in Leedom v. Kyne, 1958, 358 U.S. 184, 195–196, 79 S.Ct. 180, 3 L.Ed.2d 210, that unmeritorious attacks, at least if accompanied by relief *pendente lite*, may accomplish the very objective of effectively blocking the suspension which is meant to be reserved for meritorious ones. In this very case, although the suspension itself has remained in effect, the restraining order, to whose continuation the parties agreed, has prevented any progress with the investigation during the seven months permitted for suspension, so that unless the Long Island consents to an extension, the suspended practice, which the Commission might otherwise have cancelled during the period, will become effective a few weeks hence. Still we are not willing to say that under no circumstances may a court have jurisdiction of a suit to enjoin a suspension order. Following the lead of the majority in Leedom v.

Kyne, as interpreted in later cases, Leedom v. Norwich, Conn. Printing Specialties and Paper Products Union, 1960, 107 U.S.App.D.C. 170, 275 F.2d 628, 631, certiorari denied 1960, 362 U.S. 969, 80 S.Ct. 955, 4 L.Ed.2d 900; International Ass'n of Tool Craftsmen v. Leedom, 1960, 107 U.S.App.D.C. 268, 276 F.2d 514, 516, and Local 1545, United Brotherhood of Carpenters & Joiners of America, AFL–CIO v. Vincent, 2 Cir., 1960, 286 F.2d 127, 132–133, we think a suit to enjoin such an order for lack of power may be entertained if, but only if, the complaint shows that the suspension is plainly without statutory authority or violates "a clear statutory command," cf. Skinner & Eddy Corp. v. United States, 1919, 249 U.S. 557, 562–563, 39 S.Ct. 375, 63 L.Ed. 772, and that the complaining party has no other available remedy. Such a rule ought prevent undue interference with the agency's effective exercise of its suspension powers, particularly if courts insist on prompt hearing and ordinarily abstain from interlocutory relief, while preventing clear excesses of jurisdiction, as, for example, if the Commission were to suspend tariffs of a carrier plainly not subject to its powers or to suspend for more than the permitted seven months, cf. Atlantic Seaboard Corp. v. F. P. C., supra.

■■ Section 15(7) authorizes the Commission, *inter alia,* to investigate and suspend "any new individual or joint regulation or practice affecting any rate, fare, or charge." It can hardly be doubted that limiting the effectiveness of a rate to one of a number of routes is a "regulation or practice affecting any rate." Hence we do not understand it to be disputed that, if the $1.37 rate had once been published as a joint rate with the Nickel Plate and other carriers and had become effective, and the Long Island thereafter filed a "schedule" imposing a restriction that the rate was thenceforth to be effective only via the Pennsylvania, the Commission might "suspend the operation of such schedule and defer the use of such * * * regulation, or prac-

tice", § 15(7), as it did in Routing Restriction, Atlantic Coast Line R. Co., 309 I.C.C. 365 (1960) and Routing, Furniture, Carolina & N. W. Ry. to St. Louis, 310 I.C.C. 134 (1960), cf. Cotton from the Southwest to Southern Territory, 302 I.C.C. 637 (1958), injunction denied Southern Ry. Co. v. United States, D.C. E.D.La.1958, 166 F.Supp. 78. The Long Island's case hinges on the fact that it never proposed a $1.37 joint rate generally applicable, its agreement to that rate having been subject to individual concurrence and this having been arranged only with the Pennsylvania. Even so, it concedes the Commission could lawfully have suspended the restriction if the Commission also had suspended the $1.37 rate. But, it argues with considerable plausibility, the suspension of the routing restriction alone, pursuant to § 15 (7), in effect established a through route and a joint rate between it and other carriers to which it had never agreed, without the hearing or the findings required to that end by § 15(3), and was therefore beyond the Commission's statutory power.

Defendants answer that the participation with the Nickel Plate-Lackawanna in the $1.37 rate, into which suspension of the routing restriction precipitated the Long Island, did not have the same legal effect as action under § 15(3) would have had. The salient difference is that if the Commission had established a through route and joint rate under § 15(3), the Long Island could not have published a tariff cancelling this without Commission approval, whereas here nothing prevented the Long Island from doing precisely that. The Long Island replies that § 15 of the Act cannot be read as authorizing the Commission to force a carrier into any kind of joint rate by a suspension order under § 15(7) rather than by the procedure set out in § 15(3).

The Long Island's argument might have considerable force if the Commission had manifested any intention to take advantage of the particular form of tariff publication here used so as to hold the

Long Island against its will in a joint rate with the Nickel Plate-Lackawanna, which the Commission could not have imposed by suspending, on the Nickel Plate's protest, a joint rate filed by the Long Island and Pennsylvania acting apart from the Traffic Executive Association. The flaw in the Long Island's case is that, despite the many papers filed, the Commission was never asked to focus on that issue. The Long Island might have brought the issue to the Commission's attention in either of two ways. It might have asked the Commission to broaden the suspension to include the $1.37 rate to Long Island stations as well as the restriction and thereby restore the *status quo ante* during the period of the suspension; or it might have exercised its own rate-making powers, under § 6 (3), by cancelling the tariff and seeking permission to make the cancellation effective on short notice, at the same time preserving its position by individually submitting a new schedule, outside the Association tariff, providing for the $1.-37 rate simply as a joint rate with the Pennsylvania, either effective on the usual notice, which the Commission would doubtless have suspended, or only upon a determination of its lawfulness, see 5 U.S.C.A. § 1004(d); Grain from Groups I and J Origins to Pacific Coast, 299 I.C.C. 129, 130–131 (1956). Failing to have presented the issue to the Commission in either manner, the Long Island cannot be said to have exhausted its administrative remedies in the only sense here meaningful, despite its attempts to persuade the Commission to allow it to maintain its exclusive joint rate with the Pennsylvania without suspension. On no view would it be proper for a court to issue an injunction that would permit that; to do so would be to give the Long Island and Pennsylvania a benefit they could not have claimed if they had initiated the exclusive joint rate outside the Association tariff and the Commission had suspended that, as admittedly it could. The utmost relief to which the Long Island would be entitled on its own contentions would be an order free-

ing it from participating with anyone in the $1.37 rate during the seven months period. The courts should not grant the Long Island that relief until the Commission has been asked to and has refused.

The complaint is dismissed, thereby vacating the temporary restraining order forthwith.

BRUCHHAUSEN, District Judge (dissenting).

The principal issue herein is whether the Commission possessed the power to suspend the routing restriction, imposed by the plaintiff. Unquestionably it was authorized under 49 U.S.C.A. § 15(7) to suspend the $1.37 rate, thus preserving the status quo. By suspending the routing restriction and allowing the rate to stand, the Commission thus required the plaintiff to participate in joint rates and routes. In so acting, without conducting a full hearing the Commission exceeded its power. The establishment of through routes and joint rates is governed by Section 15(3) of the said Act which provides that "the Commission may * * * after full hearing * * * establish through routes." The suspension order resulted in effecting or establishing through routes in conjunction with joint rates.

The contention that the routing restriction is "a practice", a term used in Section 15(7) does not withstand examination. The terms "routing" and "practice" are referred to separately in Sections 15(3) and 15(7).

It is urged that the Long Island failed to avail itself of various remedies such as requesting the Commission to suspend both the routing restriction and rate or cancelling the tariff under Section 3. Assuming that the Long Island had these choices, it was not obliged to take advantage of them or either of them and should not suffer defeat because it claimed its rights under Section 15(3).

The suspension order should be vacated.