**ATLANTIC SEABOARD CORP. et al. v. FEDERAL POWER COMMISSION.**

No. 6532.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 5, 1953.

Decided Jan. 31, 1953.

that the schedules were filed as a matter of law on August 15, 1952 and that the commission was without power to suspend them beyond February 15, 1953, and that, if it had such power, its action was unreasonable and arbitrary under the facts of the case and constituted an abuse of discretion. Pending the hearing of their petition they filed a motion asking that action on the commission's order be stayed after February 15, 1953 and that they be permitted after that date to put the increased rates into effect upon petition and the giving of bond as provided by statute. The commission has moved that the petition be dismissed on the ground that the court has no jurisdiction to entertain it and objects to the stay on this ground and also on the ground that the order was a lawful and proper exercise of the commission's power in the premises.

The facts are that petitioners on August 15, 1952 filed new gas tariffs with the commission containing rates higher than those then in effect. Petitioners stated in the papers accompanying the new tariffs that the higher rates were made necessary by the fact that on the same date its supplier, United Fuel Gas Company, filed with the commission increased rates which would increase petitioners' gas purchase costs by $2,000,000 per year. United Fuel Gas Company filed its higher rates on the same date claiming that they in turn were made necessary by the filing of increased rates on the same date by its supplier, Tennessee Gas Transmission Company, which would increase the gas purchase costs of United by $6,532,000 per year. The tariffs of all three companies increasing their rates were in fact filed with and received by the commission on August 15, 1952 and all of the tariffs were accompanied by supporting data. Staff members of the commission notified petitioners that the data furnished by petitioners failed to comply in certain particulars with the regulations of the commission; and petitioners, while contending that the data furnished was in compliance with the regulations and decisions of the commission, nevertheless supplied additional data on September 8 to meet these criticisms. Four days later,

Edward S. Pinney, New York City (Jack W. Robbins, Richard DeY. Manning and Richard A. Rosan, New York City, C. E. Goodwin, Charleston, W. Va. and Cravath, Swaine & Moore, New York City, on brief), for petitioners.

W. Russell Gorman, Attorney, Federal Power Commission, Washington, D. C. (Bradford Ross, General Counsel, Bernard A. Foster, Jr., Assistant General Counsel, Reuben Goldberg and Sherman S. Poland, Attorneys, Federal Power Commission, Washington, D. C., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

The Atlantic Seaboard Corporation and the Virginia Gas Transmission Corporation, hereafter referred to as petitioners, have filed a petition with this court to review an order of the Federal Power Commission suspending certain increased rate schedules to March 9, 1953. They contend

on September 12, 1952, the commission entered orders as to the filings of all three companies, finding it necessary and proper to enter upon hearings as to all of them and suspending the rates of United and Tennessee until February 15, 1953, but suspending the rates of petitioners until March 9, 1953, thus giving United and Tennessee the benefit of the filing date of August 15, 1952, when the increased rate schedules were filed by all companies, but denying it to petitioners and treating as their filing date, September 8, 1952, the date on which they filed the additional supporting data. Petitioners applied to the commission for a rehearing as to this and showed in their petition that their increased rates were based upon the increased rates of United and that, if the latter were put into effect on February 15 and the increased rates of petitioners were suspended until March 9, petitioners would suffer a loss of $17,-500 per day for 22 days or a total of $385,-000, which they would be unable to recoup. The petition for rehearing was denied.

The principal matter relied upon by the commission as failure on the part of the petitioners to comply with the filing regulations was the fact that the cost of service as shown in the supporting data was for the calendar year 1952 (five months actual and seven months estimated) instead of for "the most recent 12 months period or calendar year" as required by the regulations. It appears, however, that in its opinion No. 225 rendered in April 1952 involving rates of these same petitioners, the commission found that the proper test year was 1952, not 1951. The filing here was the third recently made by petitioners in which costs and other matters affecting its rates were set forth, and the commission received without protest on September 7, 1951, in connection with the second filing, data based on the test year 1952 (estimated). In its opinion No. 225 the commission said with respect to the use of 1952 as a test year:

"The applicants insist, and we agree, that, under the circumstances of this case, no past year is wholly representative of future expectations. Applicants' operations underwent a sub-stantial change in 1950 as a result of the commencement of operation of the new 26-inch line. Nor would the 1951 operations reflect normal conditions for the future because some of applicants' market areas were in that year still largely in the stages of early development. Thus on this record, there is no choice but to accept the 1952 estimates, adjusted or otherwise, as the most reasonable basis for determining just and reasonable rates in this case. * * *

"Accordingly under the circumstances of this case, because of the foregoing and for the other reasons stated in the intermediate decision, we are of the opinion that the examiner properly found that the year 1952 stands as the more representative year for the purpose of testing the validity of applicant's present rate and estimates of costs of service—and for the determination of just and reasonable rates for the future."

Other matters relied on by the commission related to matters involved in the prior rate litigation, and as to these matters, petitioners were attempting to maintain in this proceeding the position formerly taken. It is a reasonable assumption that the commission had before it the facts as to all of these matters as a result of the filings theretofore made and the hearing had with respect to the first filing; but nevertheless petitioners supplied the data relating thereto as well as the cost of service for the year 1951 upon being advised by members of the commission's staff that this should be done. At all events, the commission admittedly had all required data before it in time to pass upon the schedules filed August 15 within the thirty days allowed by statute before they could be made effective and took action upon them within the thirty day period.

■ We agree with the commission that it is authorized by statute to prescribe rules and regulations under which increased rate schedules are to be filed. While the authority to prescribe rules and regulations is contained in section 4(c) of

the Natural Gas Act, 15 U.S.C.A. § 717c (c); which relates to the initial filing of rates and schedules, and not in section 4(d), which relates to changes in rates, the provisions of the statute must be construed together and it is not reasonable to give it an interpretation which would preclude the prescribing of rules and regulations with respect to the filing of rate increases where there is manifestly as much need for them as in the case of initial filings. We agree also that in the exercise of a sound discretion the commission might decline to receive rate schedules not reasonably complying with its rules and regulations. No such case is presented here, however. The rate schedules of the petitioners with supporting data were filed by them with the commission and were accepted by it. While staff members pointed out alleged defects informally, the commission did not reject the schedules but allowed them to remain on file and accepted complementary matter which was promptly supplied to meet the criticisms made. With this matter in hand the commission was in as good position to pass on the question as to whether it should suspend the rates and order a hearing as if the additional data had been originally filed. Action by the commission was not delayed beyond the 30 days notice period prescribed by the statute, but it took action suspending the rates of petitioners at the same time that it took the same action with respect to the rates of Tennessee and United which were admittedly supported by adequate data at the time of filing. That petitioners should have been allowed the same filing date as the other companies under these circumstances, when refusal to allow it might result in a large loss to them which they would be unable to recoup, is so clear that such refusal cannot be upheld as the exercise of a sound discretion on the part of the commission. Furthermore, it seems to be contrary to both the spirit and language of the commission's regulation 154.15 which provides: "154.15. Filing date. The term 'filing date' means the day on which a tariff or part thereof or a contract is received in the office of the secretary of the commis-

sion for filing in compliance with the requirements of this part."

The commission argues that it has not accepted the schedules for filing but that the order giving them a filing date as of the date when the additional data was supplied amounts to a refusal to receive them on the date of their original filing. If this view be correct, the action of the commission amounted to a refusal to permit upon request the amendment of schedules filed, when such amendment did not change the proposed rates, did not delay the commission in considering the rates beyond the thirty day period, could not possibly prejudice the commission in the discharge of its duties nor hurt any party to the controversy in any way, and when failure to allow it might result in a large loss to the party asking the amendment. Not to permit such an amendment under the circumstances here shown is, we think, an abuse of discretion which we have the power to correct. In the case of pleadings in a court, allowance of amendment is a matter ordinarily within the discretion of the court; but even there relief may be granted where there is an abuse of discretion which results in manifest injustice or deprives a party of opportunity to be heard with respect to a matter affecting his rights. See United States v. Lehigh Valley R. Co., 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; United Fuel Gas Co. v City of Ironton, 107 Ohio St. 173, 140 N.E. 884, 29 A.L.R. 342; Sheridan Wyoming Coal Co. v. Krug, 84 U.S.App.D.C. 288, 172 F.2d 282; Webster v. Hurvitz, 116 W.Va. 328, 180 S.E. 265; 5 C.J.S., Appeal and Error, § 1587, p. 480. A fortiori, it is an abuse of discretion in an administrative agency to refuse an amendment when it can cause no delay, can hurt no one, is in furtherance of justice and is necessary to prevent irreparable loss to one of the parties.

As a matter of fact the commission here permitted the amendment, and the only question is whether the time of the statute runs from the filing of the schedule or from the amendment. The rule is well

settled that, where an amendment to a complaint is allowed which does not introduce a new cause of action, the date of the commencement of suit and not the date of the amendment governs in applying the statute of limitations. 34 Am.Jur. p. 211. On like principle a mere amendment of data supporting proposed tariffs theretofore filed, if it does not change the rates therein proposed, should not be treated as a new filing for the purposes of the suspension statute but as additional data in support of the original filing. No harm can possibly result from this, since it is within the power of the commission under section 4(e) of the act to suspend the rates at any time within the thirty day period if of opinion that they have not been justified.

■■ We are not impressed with the argument that we are without jurisdiction in the premises and that the proceeding should be dismissed for that reason. The commission argues that the order which we are asked to review is not a definitive or final order of the commission; but our power to review is not limited to final orders. Section 19(b) of the Natural Gas Act gives us power to review "an order" of the commission upon the petition of a party aggrieved. We should not, of course, exercise the power to review mere preliminary or procedural orders or orders which do not finally determine rights of the parties. Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408. The order here sought to be reviewed, however, is not of that sort. It denies to petitioners the right to put into effect the increased rate schedules for a period of 22 days beyond the date when the commission was legally authorized to suspend them, if petitioners are accorded the filing date to which they are justly entitled. We are told that this will result in a loss to petitioners of $385,000 if the rates of Tennessee and United are put into effect at the end of their suspension period. It is reasonable to assume that the advanced rates of these companies will be put into effect at the earliest possible moment; and it is certain that petitioners will not be able to recoup any loss sustained by them over the 22 day period as a result of failure to advance their rates at the same time, even if they are ultimately allowed the increase which they seek in their filing, since losses sustained during a period of suspension may not be recouped by rates subsequently allowed. Hope Natural Gas Co. v. Federal Power Comm., 4 Cir., 196 F.2d 803, rehearing denied 4 Cir., 197 F.2d 522. The order which we are asked to review is therefore sufficiently distinct from the general subject of the litigation and sufficiently final and definitive to justify us in exercising the power of review vested in us by the statute. See Algonquin Gas Transmission Co. v. Federal Power Commission, 1 Cir., 201 F.2d 334; Phillips v. Securities and Exchange Comm., 2 Cir., 171 F.2d 180; Rochester Tel. Co. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Columbia Broadcasting System v. United States, 316 U.S. 407, 425, 62 S.Ct. 1194, 1204, 86 L.Ed. 1563. As said by Chief Justice Stone, speaking for the Supreme Court in the case last cited:

"The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control."

See also Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528, affirming Beneficial Industrial Loan Corp. v. Smith, 3 Cir., 170 F.2d 44, 49; United States v. River Rouge Improvement Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339; Rubert Hermanos, Inc., v. People of Puerto Rico, 1 Cir., 118 F.2d 752, 757; Kasishke v. Baker, 10 Cir., 144 F.2d 384, 386.

■ And we do not think that relief should be denied, as argued for the commission, because of the possibility that petitioners may not sustain loss as a result of the order. The suggestion that the proceedings may be concluded before the 15 of February is so far fetched as not to

warrant consideration, as everyone connected with the litigation must know that there is no possible chance of its being disposed of prior to February 15. A holding by the commission that petitioners are not entitled to any increase in rates would mean, of course, that petitioners would not be hurt by the 22 days of additional suspension; but if any part of the increase is approved they will unquestionably have sustained as a result of the suspension a loss which it will not be possible for them to recoup.

For the reasons stated, we think that the motion to dismiss should be denied and the motion to stay be granted. In as much as the case presented by the petition has been fully argued, however, and the determinative facts are of record before us, there is no reason to have a further hearing in the matter. The relief prayed by the petition will accordingly be granted and the order of the commission will be modified to substitute the date of February 15, 1953 in lieu of the date of March 9, 1953, so as to suspend petitioners' tariffs "until February 15, 1953 and until such further time as the tariffs may be made effective in the manner prescribed by the Natural Gas Act."

Motion to dismiss denied.

Order of Commission modified.