611 F.2d 951
 CONSOLIDATED GAS SUPPLY CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
CONSOLIDATED GAS SUPPLY CORPORATION, Appellee,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Appellant.
 Nos. 78-1540, 78-1666.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 2, 1979.
Decided Dec. 4, 1979.
 
 Willis O. Shay, Clarksburg, W. Va., Karol Lyn Newman, Washington, D. C. (Steptoe & Johnson, Clarksburg, W. Va., John E. Holtzinger, Jr., Thomas A. Schmutz, Washington, D. C., Henry P. Sullivan, Manchester, N. H., David E. Weatherwax and Philip L. Jones, Clarksburg, W. Va., on brief), for petitioner.
 J. Paul Douglas, Federal Energy Regulatory Commission, Washington, D. C. (Robert R. Nordhaus, Gen. Counsel, Howard E. Shapiro, Sol. and McNeill Watkins, II, Federal Energy Regulatory Commission, Washington, D. C., on brief), for respondent.
 Otis M. Smith, Gen. Counsel, Julius Jay Hollis, General Motors Corp., Detroit, Mich., Edward J. Grenier, Jr., Richard P. Noland, Earle H. O'Donnell, Christopher A. Dunn, Sutherland, Asbill & Brennan, Washington, D. C., on brief, for Intervenor General Motors Corp.
 Before RUSSELL and PHILLIPS, Circuit Judges, and ROSZEL C. THOMSEN, Senior United States District Judge for the District of Maryland, sitting by designation.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is an appeal by the Federal Energy Regulatory Commission (hereinafter Commission) of a district court grant of a conditional injunction against administrative proceedings by it under a rule to show cause issued against the Consolidated Gas Supply Corporation (hereinafter Consolidated) and a petition for review by Consolidated under § 19(b) of the Natural Gas Act, 15 U.S.C. § 717r (1970), of certain orders issued by the Commission in those administrative proceedings. Since both the appeal and the petition to review arise out of the same factual context, they were consolidated for decision.
 
 
 2
 A brief history of the administrative proceedings giving rise to these appeals is essential to an understanding of the issues posed by the parties. Such administrative proceedings began in the late 60's in connection with a certification petition filed by the petitioner-appellee, Consolidated Gas Supply Corporation, with the Federal Power Commission, now Federal Energy Regulatory Commission,[1] to authorize the construction and abandonment of certain interstate natural gas facilities under the provision of the Natural Gas Act, 15 U.S.C. §§ 717a-717z. From the outset, a significant issue was whether volumetric limitations on gas sales by Consolidated to its jurisdictional customers should be imposed as a condition of the certificate. The requested certificate was granted in 1968 but "without prejudice to the final outcome of a further proceeding, to be scheduled by subsequent order," to determine whether volumetric limitations on Consolidated's gas deliveries should be imposed. Following later developments in the proceedings, Consolidated submitted a proposed settlement, which included a resolution of the issue of volumetric limitations. This settlement was approved by the Commission in 1970. The pertinent provision of the agreement, so far as volumetric limitations were concerned, was:
 
 
 3
 Consolidated agrees to accept certificates containing maximum-day sales obligations on wholesale sales to its jurisdictional customers applicable to such sales beginning with the 1971-72 heating season. Such maximum-day volumes shall be based on estimates of customers' requirements, and shall not necessarily be based on the design limit of pipeline capacity at particular delivery locations.
 
 
 4
 On November 28, 1973, the Commission issued a show cause order in the proceedings, dealing with the reserved issue of volumetric limitations. After referring to the 1970 settlement, the order declared that the earlier settlement "specified, Inter alia, that Con Gas would accept certificates of public convenience and necessity beginning with the 1971-72 heating season, imposing volumetric limitations on the maximum daily quantities of gas which Con Gas could sell to its jurisdictional customers. To date there has been no compliance with this provision of the settlement agreement." It then added:
 
 
 5
 It is clear that since the date of the settlement agreement the annual sales of Con Gas have continued to rise. In this time of nationwide gas shortages, the public interest requires that we carefully assess any increase in deliveries of gas. To assist us in this endeavor, it is important that maximum volumetric requirements be established for each customer on any given interstate pipeline system.
 
 
 6
 In view of this, we will hereby order Con Gas to show cause why maximum annual and daily volumetric requirements should not be established for each customer on Con Gas' system for deliveries of gas based on 1971-72 requirements and, if appropriate, what requirements should be established for each such customer . . . .
 
 
 7
 Any person wishing to become a party to the show cause proceeding hereinafter ordered may do so by filing a petition to intervene on or before December 19, 1973.
 
 
 8
 After a number of hearings on this show cause order, Consolidated and other interested parties submitted on May 7, 1974, a proposed settlement which included this provision:
 
 
 9
 (a)lthough none of the parties presenting testimony proposed the imposition of volumetric limitations, it was recognized in the settlement conferences that the possible adoption by the Federal Power Commission of such limitations, after a contested proceeding, would entail prolonged litigation, resulting in highly undesirable and unnecessary uncertainty as to the natural gas service that would be available in the market area served by Consolidated. Accordingly, . . . the parties agreed to supplement the evidence submitted to the end that maximum daily and annual limitations, derived on a uniform basis, would be developed and proposed for incorporation in Consolidated's tariff. . . .
 
 
 10
 On February 27, 1978, almost four years later, the Commission rejected the settlement, giving as its reasons:Since the 1976-1977 winter heating season, Consolidated's market has also undergone certain changes. As a result, the data before us, which is projected calendar year 1974 data, may be outdated.
 
 
 11
 We find that the settlement agreement in these proceedings is based upon data which have become unreliable by the passage of time since May 7, 1974. The Commission will reject the agreement and will also terminate Docket No. CP74-149, since the record in that proceeding is comprised of data no longer useful to this Commission in reaching a decision in the show cause proceeding.
 
 
 12
 As an incident to that rejection, the Commission issued on February 27, 1978, the show cause order that is the subject matter of this appeal. That order required Consolidated to show cause why daily and annual volumetric limitations on its gas deliveries to its customers, based on data for the most recent twelve-month period, should not be established.
 
 
 13
 The Commission later directed that an initial prehearing conference (on the show cause proceedings) be held on March 23, 1978, before the administrative law judge assigned to the hearing. On the day before the date set, the Commission's Staff requested that Consolidated be required to produce certain designated materials described later by the Commission in its order sustaining the request as:
 
 
 14
 1. The maximum annual volumetric limitations which correspond to Pro forma Original Sheet No. 70 Data, attached to the May 2, 1974, Settlement Proposal in Docket No. CP74-149, using calendar year 1977 base data rather than calendar year 1974. Provide all supporting calculations in the same format as Appendix B to the May 2, 1974 Settlement Proposal.
 
 
 15
 The prehearing conference was later rescheduled for April 6, 1978, at which time Consolidated objected to the Staff's discovery request on the grounds of relevancy and privilege. The administrative law judge overruled the objection and directed Consolidated to produce the material by May 5, 1978. From this order of the administrative law judge Consolidated appealed to the Commission.
 
 
 16
 In the meantime, on March 29, 1978, Consolidated had moved for rehearing of the Commission's order to show cause as issued on February 27, 1978. In its petition, it set forth three grounds. These were:
 
 
 17
 1. The order to show cause was inconsistent with the 1970 settlement and was therefore inappropriately issued;
 
 
 18
 2. The order was unsupported and violated the Commission's regulation.[2]
 
 
 19
 3. The Commission has been fatally deficient and vague in the statements in the rule to show cause so that "Consolidated . . . (does) not understand either the legal or the factual basis underlying the order. They do not know what the Commission believes volumetric limitations should achieve, or how the Commission believes they can or should be structured."
 
 
 20
 Significantly, it did not assert as a ground for rehearing a claim of a violation of the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-703, or a claim that the order to show cause was defective for failure to specify whether the proceedings under the order to show cause were to be investigatory or adjudicatory.
 
 
 21
 In a consolidated order issued June 27, 1978, the Commission disposed of both the petition for rehearing and the appeal from the administrative law judge's overruling of its objections to the Commission Staff's discovery motion. In dismissing the petition for rehearing, the Commission responded to Consolidated's argument that the proceedings were inconsistent with Commission regulations by declaring:
 
 
 22
 Section 1.6(d) does not require the Commission to outline the "statutory or other authority" which empowers the Commission to proceed with a show cause order, as alleged by the company. Section 2.70, referred to on page 5 of the February 27 order, does support our action. This statement of policy was not relied upon as law, as further alleged by Consolidated, but it does provide a regulatory basis for our decision to institute a show cause proceeding. Section 16 of the Natural Gas Act provides the legal basis for the Commission to take actions necessary to regulate the interstate natural gas industry, pursuant to the authority granted in the Natural Gas Act. Implementation of the Commission's power to impose volumetric limitations by means of a show cause order was clearly contemplated by Congress in drafting Section 16 of the Act and by the Commission in drafting its regulations.
 
 
 23
 To Consolidated's claim that the order was so vague that it was unable to make a "meaningful answer," the Commission tartly answered:
 
 
 24
 Consolidated's statement that the order's "vagueness makes it impossible for the Respondent to prepare any meaningful answer" is puzzling. On May 7, 1974, the company filed a fully detailed settlement agreement establishing volumetric limitations for its customers in response to a nearly identically worded show cause order issued on November 28, 1973.
 
 
 25
 The Commission concluded its dismissal of the rehearing petition with this comment:
 
 
 26
 Consolidated claims "not (to) know what the Commission believes volumetric limitations should achieve, or how the Commission believes they can or should be structured." . . . General Motors spoke to the necessity of volumetric limitations on the Consolidated system in its Application for Rehearing. GM cites Commission precedent on the importance of volumetric limitations on natural gas pipelines, to which the Commission refers Consolidated. There is no need to reiterate the FPC's statements on the matter of volumetric limitations. It is rather for Consolidated to demonstrate why volumetric limitations would not be useful on the Consolidated system to assure that each customer will receive no more than specifically designated entitlements, to assure that growth will not exceed the bounds required by shortages of natural gas, and to assure that increases in deliveries will not harm present customers dependent on Consolidated's supplies as their primary source of fuel.
 
 
 27
 In sustaining the administrative law judge on his discovery ruling, the Commission began by referring to Section 1.28 of its regulations, which declares that "(r)ulings of presiding officers may not be appealed from during the course of hearings or conferences except in extraordinary circumstances where (a) prompt decision by the Commission is necessary to prevent detriment to the public interest." It found then that Consolidated had "not attempted to show any extraordinary circumstances" and denied the appeal. In so doing it directed Consolidated to respond to the Staff's request "within thirty days of the issuance of this order," I. e., within thirty days after June 27, 1978.
 
 
 28
 At this juncture in the proceedings, Consolidated filed on July 12, 1978, its petition for what it characterized as a "Declaratory Order to Remove Uncertainty as to Nature of Proceeding." In this petition, it raised for the first time the claims of improper procedure by the Commission in failing in the order to show cause to specify whether the proceedings were investigatory or adjudicatory. In the petition's prayer, Consolidated requested "that the Commission exercise its discretion and issue an order to remove the uncertainty as to whether the proceeding . . . is an adjudicatory proceeding being conducted pursuant to Section 5 of the Natural Gas Act or an investigatory proceeding being conducted pursuant to Section 14 of the Natural Gas Act." Before the Commission had ruled on this motion for a "Declaratory Order," Consolidated filed in the district court of Northern West Virginia an action for an injunction
 
 
 29
 restraining Defendant (Commission) from continuing with the administrative hearing in this proceeding until such time as the Defendant issues an order providing Plaintiff the opportunity to respond orally, in writing, or both, to the order to show cause; setting forth the particulars and matters which constitute the grounds for instituting the show cause proceeding; identifying the statutory authority under which the proceeding has been instituted; setting forth the nature of the proceeding and the matters of fact and law asserted; and identifying whether the administrative hearing is adjudicatory or investigatory in nature.
 
 
 30
 Incident to that action, Consolidated also moved for a temporary restraining order "restraining . . . (the Commission) from holding an administrative hearing . . . until such time as a hearing can be held and an order entered on Plaintiff's motion for preliminary injunction as prayed for in its complaint.
 
 
 31
 The two motions came on for hearing before the district judge on July 24, 1978. At the conclusion of the hearing the district judge concluded that the determinations by the Commission challenged in the action by Consolidated were "non-final and non-definite determinations" of a procedural nature and Congress intended that district courts should have jurisdiction over "preliminary matters of this nature" which were excluded from the scope of review available before a court of appeals.[3] He accordingly granted Consolidated injunctive relief
 
 
 32
 until such time as a proper show cause proceeding shall have been instituted in conformity with the foregoing findings and until it (the Commission) shall have identified whether said show cause proceeding is to be adjudicatory in nature under Section 5 of the Natural Gas Act or investigatory in nature under Section 14 of said Act.
 
 
 33
 From that order the Commission has appealed. At the same time, Consolidated petitioned this court to review the orders of Commission issuing the rule to show cause of February 27, 1978, and of the order denying Consolidated's petition for rehearing of June 27, 1978, under the terms of Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), "as a protective measure, to preserve this Court's jurisdiction over the issues on appeal if the Court were to determine in the appeal in No. 78-1666 that the District Court should have dismissed Consolidated's complaint for want of jurisdiction." The appeal from the district court and the petition for review were consolidated for hearing and disposition by this court without objection by the parties.
 
 
 34
 We first address the Commission's appeal from the exercise of jurisdiction by the district court. Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), vests exclusive jurisdiction to review all decisions of the Commission in the circuit court of appeals, Atlantic Seaboard Corp. v. Federal Power Com'n. (4th Cir. 1953) 201 F.2d 568, 572; there is no area of review, whether relating to final or preliminary orders, available in the district court. And this has been the uniform construction given the statute. Atlanta Gas Light Co. v. Southern Natural Gas Co. (N.D.Ga.1972) 338 F.Supp. 1039, 1048, Aff'd. on this point (5th Cir. 1973) 476 F.2d 142. In the latter case, the court dealt precisely with a claim in district court to injunctive relief in gas curtailment proceedings such as that here and it said: "District Courts do not have jurisdiction to grant injunctive relief or specific performance in actions involving curtailment proceedings." 338 F.Supp. at 1048.[4]
 
 
 35
 The district court, however, assumed that "preliminary matters" arising in proceedings before the Commission under the Natural Gas Act were excluded by the Act from review by the circuit courts of appeals and were by implication within the jurisdiction of the district court. The district court was correct in finding that circuit courts of appeal will not ordinarily review mere preliminary or procedural orders. As we emphasized in Atlantic Seaboard Corp. v. Federal Power Com'n., 201 F.2d at 572, this, however, is not because our "power to review is . . . limited to final orders," but because of a long-settled rule of judicial administration which was set forth authoritatively in Federal Power Com'n. v. Edison Co., (1938) 304 U.S. 375, 383-85, 58 S.Ct. 963, 82 L.Ed. 1408. Under this rule of judicial administration, no court, having the power of review of the actions of an administrative agency, should exercise that power to "review mere preliminary or procedural orders or orders which do not finally determine (some substantive) rights of the parties." Atlantic Seaboard Corp. v. Federal Power Com'n., 201 F.2d at 572. It follows that this court may not review preliminary or procedural orders which are not determinative of some right of the parties and, even more so, a district court may not review such orders. Thus, the reasoning used by the district court in support of its jurisdiction is conclusive against any jurisdiction in it to exercise a power of review in this proceeding.
 
 
 36
 Consolidated, though, cites Carolina Aluminum Co. v. Federal Power Commission (4th Cir. 1938) 97 F.2d 435, and Bituminous Coal Oper. Ass'n v. Sec'y of Interior (4th Cir. 1977) 547 F.2d 240, as supportive of district court jurisdiction in this case. Neither authority, in our opinion, sustains Consolidated's argument. In the first case, the petition sought review before the court of appeals, not in district court, of a so-called "negative" finding by the Commission. The decision turned on the distinction between "affirmative" and "negative" rulings by an administrative body, and its denial of a right to judicial review of "negative" findings may be considered overruled by the later decision in Rochester Tel. Corp. v. U. S. (1939) 307 U.S. 125, 143, 59 S.Ct. 754, 83 L.Ed. 1147. The court in Carolina Aluminum did suggest by way of dictum that, when there is no jurisdiction in the agency under the statute, an action in the district court might be instituted;[5] but it was careful to add that it was not "pass(ing) on (that question) authoritatively here," but only on whether it had "jurisdiction to review the findings of the Commission on the petition before us." 97 F.2d at 438. This dictum is not applicable here, since Consolidated concedes the jurisdiction of the Commission in these proceedings under the rule to show cause.[6] Reliance on Bituminous Coal is equally misplaced. In that case, the court held that "(b)ecause the Act (under review there) neither states nor implies that § 816(a) furnishes the exclusive procedure for obtaining judicial review, other procedures are not precluded. Consequently, the Administrative Procedure Act is applicable, and the Secretary's order is reviewable." 547 F.2d at 243. However, § 717r(b) has been consistently held to be the exclusive procedure for review of orders of the Commission. That fact manifestly distinguishes this case from Bituminous Coal and sustains our conclusion that the district court was without jurisdiction to interfere with the Commission's proceedings through the issuance of an injunction.
 
 
 37
 We next consider Consolidated's petition for review. At the outset, though, it must be noted that the two grounds most strenuously urged by Consolidated in support of its petition, (I. e., the failure to specify in the order whether the proceeding was investigatory or adjudicatory and the failure to conform to the notice requirements of the Administrative Procedure Act) were never raised by Consolidated in its petition for rehearing. Section 19(b) expressly provides:
 
 
 38
 No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do.
 
 
 39
 That provision of the Act has been applied often. Wisconsin v. Fed. Power Com'n. (1963) 373 U.S. 294, 307, 83 S.Ct. 1266, 10 L.Ed.2d 357; Sunray Oil Co. v. F. P. C. (1960) 364 U.S. 137, 157, 80 S.Ct. 1392, 4 L.Ed.2d 1623; F. P. C. v. Colorado Interstate Gas Co. (1955) 348 U.S. 492, 498, 75 S.Ct. 467, 99 L.Ed. 583. The reason for the statutory provision and the decisions upholding its requirement were stated in the legislative history of the statute, as quoted by the Court in F. P. C. v. Colorado Interstate Gas Co., id. at 500, 75 S.Ct. at 472:
 
 
 40
 A party cannot wilfully fail to exhaust his administrative remedies and then, after the agency action has become operative, either secure a suspension of the agency action by a belated appeal to the agency, Or resort to court without having given the agency an opportunity to determine the questions raised. If he so fails he is precluded from judicial review by the application of the time-honored doctrine of exhaustion of administrative remedies. . . . (Emphasis supplied.) S.Doc.No.248, 79th Cong., 2d Sess. 289, n. 21.
 
 
 41
 And this rule is particularly applicable when, as here, the objections are procedural and, if sound, subject to correction.
 
 
 42
 Consolidated has made no attempt to establish a "reasonable ground for (its) failure" to raise these two points in its application for rehearing. The court takes notice that Consolidated is an experienced litigant before the Commission and is represented by counsel long conversant with Commission procedure. It cannot, therefore, plead ignorance of the statutory requirement nor can it assert that, if there is merit in either claim, there was any reason why such claim was not raised by the petition for rehearing. Under these circumstances, we are precluded from considering these two grounds for review.
 
 
 43
 The other grounds for review are purely procedural.[7] While, as we have already noted, we are not foreclosed by our statutory authority for review from reviewing orders of the Commission that may not be regarded as final, courts have uniformly "declined to review non-final orders that are not 'definitive' in their impact upon the rights of the parties and do not threaten the petitioner with 'irreparable harm,' " and to be "definitive" in their impact under this rule the challenged orders must be sufficiently final that they "cannot be altered by subsequent administrative action" of the Commission. Atlanta Gas Light Co. v. Federal Power Com'n., 476 F.2d at 147 (citing Atlantic Seaboard Corp. v. Federal Power Commission, 201 F.2d 568.)The Commission's order to show cause cannot be said to be " 'definitive' in its impact" upon the rights of the parties. There has been no hearing on this matter. All that the order of February 27 does is provide the basis for a hearing. It adjudicates no rights; it resolves no claims against Consolidated. Any adjudication of Consolidated's rights must await the hearing itself. At that hearing Consolidated may litigate any claim it wishes to raise. It may well be that the Commission, after the hearing, will find no need for volumetric limitations in the operations of Consolidated's pipeline, in which event no order requiring them would be entered. It follows that the order to show cause "does not of itself adversely affect complainant but only affects (its) rights adversely on the contingency of future administrative action. In view of traditional conceptions of federal judicial powers, resort to the courts in these situations is either premature or wholly beyond their province." Rochester Tel. Corp. v. U. S., 307 U.S. at 130, 59 S.Ct. at 757; Canadian River Gas Co. v. Federal Power Commission (10th Cir. 1940) 113 F.2d 1010, 1012, Cert. denied, 311 U.S. 693, 61 S.Ct. 76, 85 L.Ed. 449. It is perhaps appropriate to add that the fact that Consolidated may be subjected to the inconvenience of a hearing will not impose such irreparable injury as to support interlocutory review. Niagara Mohawk Power Corp. v. F. P. C. (2d Cir. 1976) 538 F.2d 966, 969-70. Until some definitive order causing Consolidated irreparable injury, determining finally the rights of Consolidated, has been entered in the proceedings, a petition by Consolidated for review of the rule to show cause issued by the Commission on February 27 is premature.
 
 
 44
 We do not regard Fort Sumter Tours, Inc. v. Andrus, (4th Cir. 1977) 564 F.2d 1119, contrary to the views expressed Supra. In that case, the order, though not the final order in the proceedings, was one " 'definitive' in (its) impact upon the rights of" the plaintiff and one, which in a practical way, could not "be altered by subsequent administrative action." It thus met the criteria for review of a nonfinal order under the rule stated in Atlantic Seaboard. But the Court recognized in Fort Sumter Tours that in the ordinary situation judicial review of the action of an administrative agency must await "the issuance of a formal administrative order enforceable against a person or class of persons" and that "until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties," judicial review is premature. Id. at 1123. And it is that kind of situation that confronts us here and review of which must "awaits the issuance of a formal administrative order." Neither is Pepsico, Inc. v. F. T. C., 472 F.2d 179, the other precedent relied on by Consolidated, in point. There, the court sustained the district court's refusal to dismiss the plaintiff's injunctive action against an agency proceeding "plainly beyond its jurisdiction." Id. at 187. That ground for district court jurisdiction to restrain an agency for acting beyond its statutory authority and jurisdiction, however, does not exist in this case, for Consolidated has conceded the Commission's jurisdiction.
 
 
 45
 Consolidated's objection to the Commission's dismissal of its objections to the Staff's discovery motion is directed at what it alleges would be the inconvenience and burden that compliance with the motion would require. Mere expense and inconvenience in complying with a discovery order, however, do not ordinarily present grounds for interlocutory review of evidentiary rulings by an administrative agency. See Niagara Mohawk Power Corp. v. F. P. C., 538 F.2d at 969-70. Certainly, Consolidated has not alleged any special circumstances warranting a departure from this general rule. There is accordingly no basis for reviewing at this time the Commission's order on the Staff's discovery motion.
 
 
 46
 For the foregoing reasons Consolidated's petition for review is dismissed without prejudice, the district court's injunctive order vacated, and the case remanded with instructions to dismiss the complaint.
 
 
 
 [1]
 The functions of the Federal Power Commission, as pertinent here, were transferred to and vested in the Federal Energy Regulatory Commission in the Department of Energy in 1977. Pub.L. No. 95-91.91 Stat. 583 (codified at 42 U.S.C. § 7172(a))
 
 
 [2]
 Consolidated specified the manner in which it claimed the order violated Commission regulations thus:
 (1) It does not specify the statutory or other authority under which the proceeding has been instituted, 18 CFR §§ 1.6(d), 1.20(m)(2);
 (2) It does not set forth the grounds for the action taken, 18 CFR § 1.6(d);
 (3) It does not contain a statement of the particulars and matters concerning which the inquiry will be made, 18 CFR § 1.6(d);
 (4) It does not provide an opportunity for Consolidated to respond either orally or in writing, 18 CFR § 1.6(d).
 
 
 [3]
 App. J.A. 174
 
 
 [4]
 Jurisdiction in the Commission to require curtailment plans or volumetric limitations on jurisdictional customers by interstate natural gas pipelines was authoritatively upheld in F. P. C. v. Louisiana Power & Light Co., (1972) 406 U.S. 621, 642, 92 S.Ct. 1827, 32 L.Ed.2d 369
 
 
 [5]
 See Pepsico, Inc. v. F. T. C., (2d Cir. 1972) 472 F.2d 179, Cert. denied (1973) 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122, discussed later
 
 
 [6]
 In its brief in this Court, Consolidated states:
 Consolidated does not seek review of any substantive determination made by the Commission, no such determination having been made, and does not object to the Commission's assertion of jurisdiction. Rather, Consolidated objects to the very real and important deficiencies in the Commission's orders initiating the proceeding. Those deficiencies deny Consolidated enforceable legal rights created by express provisions of the Administrative Procedure Act and the Commission's regulations.
 
 
 [7]
 The claim of Consolidated that it knows not the purpose or scope of the proceedings appears specious on its face. For almost a decade Consolidated and the Commission have been sparring about the establishment of volumetric limitations on Consolidated's jurisdictional sales. Consolidated has entered into a consent order or two which had as one of their ultimate purposes the establishment of such limitations. On one occasion at least Consolidated has prepared and submitted a proposed volumetric limitation plan. This was submitted, it is true, in connection with a proposed settlement, which the Commission refused to approve. The fact remains, however, that Consolidated evidenced its understanding of what the Commission was seeking by way of volumetric limitations
 In many respects, Consolidated would have us require that pleadings in administrative proceedings be stricter than the requirements for court pleadings and as rigid as the requirements of an indictment. But, as a recent authority has phrased it: "Pleadings in administrative proceedings are not judged by the standards applied to an indictment at common law. It is sufficient if the respondent 'understood the issue' and 'was afforded full opportunity' to justify its conduct during the course of the litigation." Aloha Airlines, Inc. v. C. A. B. (D.C. Cir. 1979) 194 U.S.App.D.C. 331, 343, 598 F.2d 250, 262.